IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

SHELBY COUNTY
CHANCERY COURT
MAY 19 2010
TIME: ____ BY ____
DEWUN H. SELLS, C & M

| | |
|---|---|
| John L Bullock<br>    Plaintiff/Petitioner, | )<br>)<br>) |
| | ) |
| Vs. | )   CASE NO. CH 10 — 0916 —1<br>)   JURY DEMAND |
| | ) |
| WORLDS SAVINGS BANK, FSB | ) |
| | ) |
| WACHOVIA MORTGAGE | ) |
| SENIOR VICE PRESIDENT MARY C REEDER | ) |
| | ) |
| THE CITY OF MEMPHIS | ) |
| PAMELA POPE JOHNSON | ) |
| MELISSA PALO | ) |
| | ) |
|     RESPONDENTS. | )<br>) |
| | ) |

---

## PETITION FOR ACTION TO QUIET TITLE

---

### PLAINTIFF'S/PETITIONER'S COMPLAINT

    To the Chancellors of the Chancery Court for the Thirtieth Judicial District comes now John L Bullock Plaintiff/Petitioner, making his special presentation In Propria Persona, hereby files this petition for action to quiet title against the Respondents with respect to certain lot and landed real estate and in support thereof aver the following:

### PARTIES

1. Johnn L Bullock, hereinafter known as the Plaintiff/Petitioner, is domiciled in Memphis, Shelby County, Tennessee, and is the alleged mortgagor(s) of certain improved landed real estate located at [3336 Durford Wood Cove, Memphis, Tennessee 38128], Lot 63, Section A Raleigh Heights Subdivision, as shown on Plat of record Book 59, Page 13, recorded in the Register's Office of Shelby County, Tennessee, Exhibit A, B and C instrument No. 07073545, 07073546 and LG 6912, allegedly encumbered by a mortgage purported to be owned and/or serviced by the alleged holders in due course the Respondents for an alleged Exhibit A and B are loan amounts of $78,750.00 and $15,750.00 for terms of 30 years respectively.

2. The Respondent, World Savings Bank, FSB, hereinafter known as the Company, is organized under the laws of the United States and having its principle place of business in San Antonio, Texas. By and through their agents, conveyed a non conformed commercial mortgage security instrument that created a contractual breach of which the Plaintiff/Petitioner demand to inspect the original conformed instrument to verify the validity of their debt obligation

3. The Respondent, Wachovia Mortgage, FSB, hereinafter known as the Alleged party of Interest, are organized under the laws of the United States and has its principle place of business in San Antonio, Texas. The Plaintiff/Petitioner would aver the party mention as having a claim of interest in the Plaintiff's/Petitioner's landed real estate in fact has no legal right to any interest or claim and are not mentioned and were not contracted with in the original contract. We would ask this party to provide documentary proof of their claim of interest in the Plaintiff's/Petitioner's landed real estate.

4. The Respondent, Senior Vice President, Mary C Reeder, hereinafter known as the Agent, was an agent and employee of the Alleged party of Interest. The Plaintiff/Petitioner would aver the Agent mention as having a claim of interest in the Plaintiff's/Petitioner's landed real estate in fact has no legal right to any interest or claim and are not mentioned and were not contracted with in the original contract. We would ask this party to provide documentary proof of their claim of interest in the Plaintiff's/Petitioner's landed real estate.

5. The Respondents, THE CITY OF MEMPHIS and their Agents Pamela Pope Johnson and Melissa Palo, hereinafter known as the Alleged party of Interest 2, are organized under the laws of the United States and has its principle place of business in San Antonio, Texas. The Plaintiff/Petitioner would aver the party mention as having a claim of interest in the Plaintiff's/Petitioner's landed real estate in fact has no legal right to any interest or claim and are not mentioned and were not contracted with in the original contract. We would ask this party to provide documentary proof of their claim of interest in the Plaintiff's/Petitioner's landed real estate.

## QUESTION

Does the original negotiable instrument Exhibit A and B, a breached commercial mortgage contract, governed by the federal laws and the uniform laws of all the states including the District of Columbia, become voidable if such original negotiable instrument Exhibit A and B (30 year mortgage transaction), is in contravention to the rules of law under which it is governed? (The Statutes at Large, Treaties, and Proclamations of the United States of America (from December 1863 – December 1865), Volume 13, 38th Congress, Session I, Chapters 104, 106, & 107, Pages 99-118.)

**RULES GOVERNING HOLDING OF REAL ESTATE,** "And be it further enacted, such associations shall not purchase or hold real estate in any other case or for any other purpose than as specified in this section. **Nor shall it hold the possession of any real estate under**

2

**mortgage, or hold the title and possession of any real estate purchased to secure debts due to it for a longer period than five years."** (Section 28, page 108);

The Plaintiff/Petitioner, aver by the terms of the contractual conveyance, the original instrument deed of trust states on the bottom of page 7 of 16; "15.Governing Law of Severability. **Governing Law; Severability** – **This Security Instrument** and the secured notes shall be governed **by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions, ("Federal Law") and, to the extent Federal law does not apply, by the law of the jurisdiction in which the Property is located.** This instrument is recorded in the Register's Office of Shelby County, Tennessee Exhibit A and B.

## JURISDICTION AND VENUE
### OBLIGATIONS OF STATE COURTS:

The Plaintiff/Petitioner avers jurisdiction is proper for this Honorable Chancery Court due to the allegation of contractual commercial mortgage fraud disputing the validity of the original security instrument and pursuant to the terms and conditions governing this security instrument; *Article 8 Uniform Commercial Code (U.C.C.) § 8-110: Applicability; Choice of Law*— "(a) The local law of the issuer's jurisdiction, as specified in subsection (d) governs: (1) The validity of a security; (b) The local law of the securities intermediary's jurisdiction, as specified in subsection (e), governs: ...(4) Whether an adverse claim can be asserted against a person who acquires a security entitlement from the security intermediary of a person who purchases a security entitlement or interest therein from an entitlement holder; (c) The local law of the jurisdiction in which a security certificate is located at the time of the delivery governs whether an adverse claim can be asserted against a person to whom the security certificate is delivered;" The terms of the contract state the following;

"It is an admitted principle, that a court of law has concurrent jurisdiction with a court of chancery, in cases of fraud."

**U.S. Supreme Court GREGG, BY CRAIG v. SAYRE'S LESSEE, 33 U.S. 244 (1834)**

Page 7 of 16; "15.Governing Law of Severability. Governing Law; Severability – This Security Instrument and the secured notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions, ("Federal Law") and, to the extent Federal law does not apply, by the law of the jurisdiction in which the Property is located. This instrument is recorded in the Register's Office of Shelby County, Tennessee Exhibit A and B.

**The United States Supreme Court:** State courts, like federal courts, have a "constitutional" obligation to safeguard personal liberties and to uphold federal law. **Stone v. Powell 428 US 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067.**

**The United States Supreme Court:** The obligation of state courts to give full effect to federal law is the same as that of federal courts. **New York v. Eno. 155 US 89, 15 S. Ct. 30, 39 L. Ed. 80.**

**The United States Supreme Court:** An administrative agency may not finally decide the limits of its statutory powers; this is a judicial function. **Social Security Board v. Nierotko. 327 US 358, 66 S. Ct. 637, 162 ALR 1445, 90 L. Ed. 719.**

## AFFIDAVIT OF FACTS

1.     The Plaintiff/Petitioner avers,  he has personal knowledge of the facts contained herein and will assert his Real Defense remedy in contract against the Company, their Agent(s), the Alleged party of interest, and the Alleged party of interest 2 for **fraud in the factum** that breaches the commercial  mortgage contract and the debt obligation of the obligor. The Plaintiff/Petitioner also alleges a further breach in that he did not receive a proper copy of the security instrument and note as promised by the original contracts Exhibit A and B.  The Plaintiff/Petitioner received a copy instead of a conformed copy as required under the terms and conditions of the original contractual conveyances Exhibit A and B. The  Plaintiff/Petitioner  will  allege  violations  of  the  following  Prima  Facie  laws governing the contractual obligations of Exhibit A and B;

**Article 3 U.C.C. § 3-305.  Defenses and claims in recoupment**— "(a) Except as stated in subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following: (1) a defense of the obligor based on: ...(ii) duress, lack of legal capacity or illegality of  the transaction WHICH, UNDER OTHER LAW, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms;"

**Tennessee Code Annotated (T.C.A.) 47-3-305 Defenses and claims in recoupment**— "(a) Except as stated in subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following: (1)  a defense of the obligor based on: ...(ii) duress, lack of legal capacity or illegality of  the transaction WHICH, UNDER OTHER LAW, nullifies the obligation of the obligor; (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms;"

**T.C.A. 47-18-104 Unfair or deceptive acts prohibited**— "(a) Unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices

4

and are Class B misdemeanors." (b) Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part: ...(12) Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law."

2. The Plaintiff/Petitioner aver the basis for position is due to the continued use, by the Company, their Agent(s), the Alleged party of interest, and the Alleged party of interest 2 of the original negotiable instrument, Deed of Trust, Exhibit A and B, breached commercial mortgage contract and a 30-year mortgage transaction deemed to be fraudulent by the Plaintiff/Petitioner. All of which are activities affecting, interstate and foreign commerce, in an attempt to enforce an illegal and unlawful fraudulent debt obligation. The following case laws are offered in support that fraud destroyed everything contractually associated with the original negotiable instrument Exhibit A and B:

"Bad faith and fraud are synonymous and also synonymous with dishonesty, infidelity, faithlessness, perfidy, unfairness, etc."

**Joiner v. Joiner, Tex. Civ. App., 87 S.W. 2d 903, 914, 915.**

"Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantage to the one party, or to cause an inconvenience or loss to the other."

**Civil Code La. Art. 1847. Strauss v. Insurance Co. of North America, La. 661, 102 So. 861, 865; Jesse French Piano & Organ Co. v. Gibbon, Tex. Civ. App., 180 S. W. 1185, 1187.**

"Fraud destroys the validity of everything into which it enters."

**Nudd v. Burrows, 91 US 426; NUDD v. BURROWS, 91 US 426 (1875) -- US Supreme Court Cases from ... NUDD v. BURROWS, 91 US 426 (1875) ... NUDD ET AL. v. BURROWS, ASSIGNEE. October Term, 1875.**

3. The Plaintiff/Petitioner avers the Company, their Agent(s), the Alleged party of interest, and the Alleged party of interest 2 are not the holders in due course of the original negotiable instrument, deed of trust Exhibit A and B, deemed by the Plaintiff/Petitioner as voidable by law due to a breach in the agreement and the fact this security instrument (30 year mortgage contract) was conveyed contractually for a period longer than 5 years, in direct contravention of the federal and state laws of which it is governed.

4. The Plaintiff/Petitioner avers the negotiable instrument contractual conveyance was brought into existence on April 27, 2007 with the date due and payable on May 1, 2037, of which the

Respondents are claiming to be holders in due course was breached when the Plaintiff/Petitioner received a non-conformed copy instead of a conformed copy of the security instrument and the fact a 30 year mortgage transaction is in direct contravention of the following federal and state statutes; The Statutes at Large, Treaties, and Proclamations of the United States of America (from December 1863 – December 1865), Volume 13, 38th Congress, Session I, Chapters 104, 106, & 107, Pages 99-118, 15 United States Code (U.S.C.) Chapter 41, Subchapter V § 1692 (e), (f) & (g), 18 U.S.C. Part I, Chapter 63 § 1344, 18 U.S.C. Part I, Chapter 96 § 1961, 18 U.S.C. Part I, Chapter 96 § 1962 (a) and (b), Article 3 U.C.C. § 3-305 (a) 1; Tennessee Code Annotated (T.C.A.) Title 28 Chapter 14 § 110; T.C.A. Title 29 Chapter 14 § 103; T.C.A. Title 47 Chapter 3 § 305 (a) 1; T.C.A. Title 47 Chapter 18 § 104 (a) (b) 12; and deemed legally voidable by the Plaintiff/Petitioner.

5. The Plaintiff/Petitioner avers the petition for action to quite title provides him with a Real Defense remedy in contract against the alleged holders in due course due to the mortgage conveyances contractual break down, breach, and his lawful right to challenge any and all disquieting claims. The Plaintiff/Petitioner should be allowed continued possession and use of his landed real estate in accordance with his Paramount Title (Warranty Deed) Exhibit C.

6. The Plaintiff/Petitioner avers he is the owner of a more Paramount Title (Warranty Deed) Exhibit C, which specifies ownership is in fee simple forever for the above mentioned Plat assigned by their more Paramount Title, Warranty Deed, LG 6912, registered with the Shelby County Register's Office, Exhibit C.

7. The Plaintiff/Petitioner avers his Warranty Deed Exhibit C states, "Lot 63, Section A, A Raleigh Heights Subdivision, Plat Book 59, Page 13, recorded in the Register's Office of Shelby County, Tennessee," under instrument No. LG 6912 and further state the property was <u>conveyed</u> to him the Plaintiff/Petitioner, "With all the <u>appurtenants</u> and <u>hereditaments</u> <u>thereunto belonging or in any wise appertaining unto the Grantee, Grantee's heirs and</u> <u>assigns, in fee simple forever.</u>

8. The Plaintiff/Petitioner avers there are <u>no encumbrances</u> and the deed specifies, <u>"the title and</u> <u>quite possession Grantor warrants and will forever defend against the lawful claims of all</u> <u>persons."</u>

## ARGUMENT

9. The Plaintiff/Petitioner avers he is the legal and lawful possessors, occupier, owner, and holder of the bona fide title and have absolute right of possession and right to interest in the landed real estate located at [3336 Durford Wood Cove, Memphis, Tennessee 38128], Lot 63, Section A Raleigh Heights Subdivision, as shown on Plat of record Book 59, Page 13, recorded in the Register's Office of Shelby County, Tennessee Exhibit C. Due to fraud in the factum and a breach of contract based on the fact a proper copy of this security instrument Exhibit A and B were not received at signing.

10. The Plaintiff/Petitioner avers the Company, their Agent(s), the Alleged party of interest, and the Alleged party of interest 2 are attempting foreclosure actions based on the original negotiable instrument deed of trust a 30 year commercial mortgage transaction deemed to be

breached and voidable by the Plaintiff/Petitioner according to the federal and state laws governing the original contract in question Exhibit A. The Plaintiff/Petitioner shall show this Honorable Chancery Court and a Jury that no valid defeasance exits to lawfully and legally deprive the Plaintiff/Petitioner of the absolute right, occupation, use, and quite enjoyment of his land/property.

11. The Plaintiff/Petitioner aver the Company, their Agent(s), the Alleged party of interest, and the Alleged party of interest 2, have no legitimate business interest or claim to the Plaintiff's/Petitioner's landed real estate due to the breach of contract and fraudulent nature of the original negotiable instrument, deed of trust Exhibit A and B, 30-year commercial mortgage transaction, which violates the aforementioned Statutes at Large, Treaties, and Proclamations of the United States of America (from December 1863 – December 1865), Volume 13, 38th Congress, and Prima facie laws - Uniform Commercial Code (U.C.C.), United States Codes (U.S.C.), and Tennessee Code Annotated (T.C.A.).

12. The Plaintiff/Petitioner avers due to the fraudulent nature the original deed of trust and note brought into existence on April 25, 2007 and breached thereafter; that he is now the sole legal owner, possessor and holder of his property by possessing the only Bona Fide Warranty Deed and Title to his landed real estate located at [3336 Durford Wood Cove, Memphis, Tennessee 38128], Lot 63, Section A Raleigh Heights Subdivision, as shown on Plat of record Book 59, Page 13, recorded in the Register's Office of Shelby County, Tennessee Exhibit C.

13. The Plaintiff/Petitioner avers by virtue of the contractual conveyance in fee simple forever from William F. Hakes and Mary Lou Hakes, of which a copy of said Warranty Deed and Title are located in the Register's Office of Shelby County, Tennessee, instrument number, Exhibit C, LG 6912 and predates the Original Deed of Trust making the Plaintiff/Petitioner the Paramount Title holder and owner to his landed real estate.

14. The Plaintiff/Petitioner would demand answers to the interrogatories, depositions for disclosure, and discovery propounded by the Plaintiff/Petitioner to verify any and all claims of interest to the landed real estate, purportedly held by the Company, their Agent(s), the Alleged party of interest, and the Alleged party of interest 2, pursuant to Rule 33 of the Tennessee Rules of Civil Procedure – Interrogatories to Parties, and pursuant to the rules of the Chancery Court of Shelby County, Tennessee, Thirtieth Judicial District; Rule 26 – Interrogatories which if provided will validate the Plaintiff's/Petitioner's claim against the Company, their Agent(s), the Alleged party of interest, and the Alleged party of interest 2.

15. The Plaintiff/Petitioner avers in acting fraudulently and deceitfully as set forth herein, the Company, their Agent(s), the Alleged party of interest, and the Alleged party of interest 2 acting jointly and severally, and intending too and did vex, annoy, and injure the Plaintiff/Petitioner by violating the federal and state statutory laws governing the original commercial mortgage contract Exhibit A and B, and are attempting to continue the enforcement of this illegal fraudulent debt obligation.

16. The Plaintiff/Petitioner avers the Company, their Agent(s), the Alleged party of interest, and the Alleged party of interest 2 are attempting to enforce the above mentioned illegal fraudulent debt obligation, the violations of which were either singularly or combined one with another and were the direct and proximate cause of the malicious permanent, public, private and real injuries complained herein.

## REMEDY REQUEST BY THE
## PLAINTIFF/PETITIONER

17. **The Plaintiff/Petitioner avers due to the fraudulent nature of the original commercial contractual conveyances Exhibit A and B, 30 year mortgage transaction and the fact the original contract was breached due to the Plaintiff's/Petitioner's receipt of a non-conformed copy at the time of his endorsement (endorsement), April 25, 2007. The Plaintiff/Petitioner would demand an opportunity to inspect and copy the original conformed copy of this note and of this security instrument, in accordance with the terms of the original contract; located on page 8 of 16 of the original contract in a section numbered and entitled, "16. Borrowers Copy." and pursuant to Rule 33 of the Tennessee Rules of Civil Procedure and Federal Rule of Civil Procedure 34.**

18. The Plaintiff/Petitioner avers by the terms of the original commercial mortgage contract he should have been given a conformed copy; which by case law and definition is one where a clerk of the court makes notations and/or a judges' signature is affixed to the instrument.

19. The Plaintiff/Petitioner avers he would demand a copy of any and all documents related to commercial mortgage negotiable instrument no. 07073545 and 07073546 on file in the Office of the Register of Deeds for Shelby County, Tennessee allegedly held by the Company, the Alleged party of interest, and their Agent(s) associated with this contractual conveyances.

20. The Plaintiff/Petitioner avers he discharged any and all commercial mortgage contractual obligations and rescind any and all signatures in reference to the commercial mortgage contracts due to the lack of legal proof of the fraudulent debt obligation and the Company, their Agent(s), the Alleged party of interest, and the Alleged party of interest 2 continued use of the fraudulent and breached original negotiable instrument, deeds of trust Exhibit A and B to enforce an illegal and unlawful fraudulent debt obligation.

21. The Plaintiff/Petitioner avers in the event the Company, their Agent(s), the Alleged party of interest, and the Alleged party of interest 2 are able to verify the validity of this debt obligation; the Plaintiff/Petitioner promise to work out reasonable payment methods and/or will pay the fraudulent debt in full.

**Wherefore;**

22. The Plaintiff/Petitioner prays this Honorable Chancery Court rule in their favor and against the Company, their Agent(s), the Alleged party of interest, and the Alleged party of interest 2 and enter an order for a default judgment with prejudice awarding the Plaintiff/Petitioner

with his remedy so requested.   In addition the Plaintiff/Petitioner would request reimbursement and restitution for any court cost and Attorney fees associated with preparing this cause of action suit.

23. The Plaintiff/Petitioner prays this Honorable Chancery Court instruct the Company, their Agent(s), the Alleged party of interest, and the Alleged party of interest 2 to verify the validity of this debt obligation by providing the Plaintiff/Petitioner with the bona fide conformed copy of this debt obligation for both **inspection** and for the Plaintiff/Petitioner to ascertain **a copy** for his records as promised under the terms and conditions of the original commercial mortgages contractual obligation Exhibit A and B. (Pursuant to the Tennessee rules of civil procedure 33 Interrogatories and the federal rule of civil procedure 34)

24. The Plaintiff/Petitioner prays this Honorable Chancery Court grants the removal of any and all clouds on his title and grant any other such relief as appropriate related to this suit in equity pertaining to the landed real estate located at [3336 Durford Wood Cove, Memphis, Tennessee 38128], Lot 63, Section A Raleigh Heights Subdivision, as shown on Plat of record Book 59, Page 13, recorded in the Register's Office of Shelby County, Tennessee.

Johnn L Bullock<br>
3336 Durford Wood Cove<br>
Memphis, Tennessee 38128<br>
901-386-1788

# DICTIONARY TERMS IN SUPPORT OF PLAINTIFF'S/PETITIONER'S COMPLAINT

## BARRON'S LAW DICTIONARY FIFTH EDITION

The Plaintiff/Petitioner aver **ignorance** of the law does not justify the act by definition.

**Ignorance – lack of knowledge.  Ignorance of the law does not justify an act since every person is presumed to know the law.**

**Ignorantia legis non excusat – Lat: ignorance of the law is no excuse, i.e. the fact that the defendant did not think his act was against the law does not prevent the law from punishing the prohibited act.**

**Conformed Copy – an exact copy of a document, often certified to be so by a clerk of a court, with handwritten notations duplicating those of the original document.  Thus an order may have the date, precise terms, and signature of the judge written by hand on another copy of a proposed order which had not been signed.  This then becomes a conformed copy of the order which was completed and signed by the court.**

## BLACKS LAW DICTIONARY, REVISED 4TH EDITION

**Covenant of Quiet Enjoyment** – A covenant, usually inserted in leases and conveyances on the part of the grantor, promising that the tenant or grantee shall enjoy the possession of the premises in peace and without disturbance.

9

**Covenant of Warranty** – An assurance by the grantor of an estate that the grantee shall enjoy the same without interruption by virtue of a paramount title.

**Fee Simple (American law)** – An absolute or fee-simple estate is one in which the owner is entitled to the entire property, with unconditional power of disposition during his life and descending to his heirs and legal representatives upon his death estate.

**Paramount Title** – In the law of real property, properly one which is superior to the title which it is compared, in the sense that the former is the source of origin of the latter. It is, however, frequently used to denote a title which is simply better or stronger than another, or will prevail over it.

**Quite** – To pacify; to render secure or unassailable by the removal of disquieting causes or disputes. This is the meaning of the word in the phrase "action to quite title," which is a proceeding to establish the Plaintiff's title to land by bringing into court an adverse claimant and there compelling him either to establish his claim or be forever after stopped from asserting it.

**Title** – The union of all the elements which constitute ownership.

**Warranty Deed** – One which contains a covenant of warranty.

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S/PETITIONER'S COMPLAINT</u>

**Covenant of Warranty** - King v. Kilbride, 58 Conn. 109, 19A. 519. Blair v Morris, 212 Ala. 91, 101 So. 745, 746.

**Fee Simple (American Law)** - Slayden v. Hardin, 257 Ky. 685, 79 S.W. 2d 11, 12.

**Paramount Title** - Hoops v. Meyer, 1 Nev. 444. Jones & Brindisi, Inc., V. Bernstein, 119 Misc. Rep. 697, 197 N.Y.S. 263, 265.

**Quite Title** - Wright v. Mattison, 18 How. 56, 15 L. Ed. 280.

**Title** – Carroll v. City of Newark, 108 N.J.L. 323, 158 A. 458, 461.

### Certificate of Service

I, Johnn L Bullock, Plaintiff/Petitioner, do hereby certify that a copy of the foregoing petition for action to quiet title was delivered via the Secretary of the State of Tennessee, to World Savings Bank, FSB 4101 Wiseman Boulevard, San Antonio, TX 78251, to Wachovia Mortgage, FSB located at 4101 Wiseman Boulevard, San Antonio, TX 78251 and THE CITY OF MEMPHIS, and their Agents Linebarger Goggan Blair & Sampson, LLP, One Commerce Square, 40 South Main Street, Suite 2250, Memphis, Tennessee 38103, C/O Pamela Pope Johnson and Melissa Palo, this 19th day of May, 2010.

*Johnn L. Bullock*

Johnn L Bullock
3336 Durford Wood Cove
Memphis, Tennessee 38128
901-386-1788

IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

John L Bullock                         )
     Plaintiff/Petitioner,           )
                                     )
                                     )
Vs.                                    )      CASE NO. CH 10- 0516-1
                                     )      JURY DEMAND
                                     )
WORLDS SAVINGS BANK, FSB               )
                                     )
WACHOVIA MORTGAGE                      )
SENIOR VICE PRESIDENT MARY C REEDER    )
                                     )
THE CITY OF MEMPHIS                    )
PAMELA POPE JOHNSON                    )
MELISSA PALO                           )
                                     )
     RESPONDENTS.                    )
                                     )
                                     )

## CHANCERY COURT EXHIBIT TABLE OF CONTENTS

1. World Savings Bank, FSB, Instrument 07073545          **Exhibit A**

2. World Savings Bank, FSB, Instrument 07073546          **Exhibit B**

3. Warranty Deed, Instrument LG 6912                     **Exhibit C**

4. Notice of Transfer of Mortgage Letter 1               **Exhibit D**

5. Notice of Transfer of Mortgage Letter 2               **Exhibit E**

Johnn L Bullock
3336 Durford Wood Cove
Memphis, Tennessee 38128
901-386-1788

1

## Certificate of Service

I, Johnn L Bullock, Plaintiff/Petitioner, do hereby certify that a copy of the foregoing petition for action to quiet title was delivered via the Secretary of the State of Tennessee, to World Savings Bank, FSB 4101 Wiseman Boulevard, San Antonio, TX 78251, to Wachovia Mortgage, FSB located at 4101 Wiseman Boulevard, San Antonio, TX 78251 and THE CITY OF MEMPHIS, and their Agents Linebarger Goggan Blair & Sampson, LLP, One Commerce Square, Suite 2250, Memphis, Tennessee 38103, C/O Pamela Pope Johnson and Melissa Palo, L this 19th day of May, 2010.

John L. Bullock

John L Bullock
3336 Durford Wood Cove
Memphis, Tennessee 38128
901-386-1788

2

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073545

Exhibit A



## *Tom Leatherwood*
### Shelby County Register

As evidenced by the instrument number shown below, this document
has been recorded as a permanent record in the archives of the
Office of the Shelby County Register.



160 N. Main St., Suite 519 ~ Memphis, Tennessee 38103 ~ (901) 545-4366
http://register.shelby.tn.us

Tom Leathenwood, Shelby County Register of Deeds: Instr. # 07073545

WORLD SAVINGS BANK, FSB

THIS INSTRUMENT WAS PREPARED BY
~~AND WHEN RECORDED MAIL TO:~~
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

*Return To:*

**PROFESSIONAL
TITLE & ESCROW, LLC**
6800 Poplar Ave., Suite 125
Memphis, TN 38138

LOAN NUMBER: 0048950938

NOTE AMOUNT: $78,750.00

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY PAYMENT AMOUNT AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST), AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $98,437.50 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

MAXIMUM PRINCIPAL INDEBTEDNESS FOR TENNESSEE RECORDING TAX PURPOSES IS $78,750.00 DOLLARS;

I.     DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
      (A)   Security Instrument. This Deed of Trust, which is dated April 25, 2007 will be called the "Security Instrument."

      (B)   Borrower. JOHN L. BULLOCK, UNMARRIED

sometimes will be called "Borrower" and sometimes simply "I" or "me."

      (C)   Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612.

      (D)   Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. $78,750.00 ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in full by May 1, 2037.

SD018A (2004-10-7)
DEFERRED INTEREST                    Page 1                    TN

LENDER'S USE ONLY

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073545

0045950938

(E)   Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F)   Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G)   Person. Any person, organization, governmental authority or other party will be called "Person."

(H)   Trustor, Beneficiary, Trustee. Borrower is the "Trustor," Lender is the "Beneficiary" and J. Franklin McCreary, a resident of Williamson County is the "Trustee."

II.   BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)   pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.   DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)   The property which is located at 3336 DURFORD WOOD COVE, MEMPHIS, TN 38128-3426. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

SD616A (2004-10-2)                              Page 2                              TN

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073545

0045950938

IV.   **BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**COVENANTS**

I promise and I agree with Lender as follows:

1.   **BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

2.   **PAYMENTS FOR TAXES AND INSURANCE**

(A)   **Borrower's Obligations**

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

(B)   **Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

SD8160 (2004-10-2)                    Page 3                    TN

0046980938

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3.      APPLICATION OF BORROWER'S PAYMENTS**

Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

**4.      BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.      BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance

0045950938

policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgagee Clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes, whether or not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.    BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD818E (2004-10-7)

Page 5

TN

𝓙𝓛𝓑

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073545

0045950938

7.    LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8.    LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

9.    AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other government taking of the property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

(A)    Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

SD011SF (2004-10-1)          Page 8                                                        TN

0043980938

**(B)    Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

**11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.    MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 3336 DURFORD WOOD COVE, MEMPHIS, TN  38128-3426.

A notice will be given to me at an alternative address if I give Lender a notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used in this Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions, ("Federal Law") and, to the extent Federal Law does not apply, by the law of the

SD818Q (2004-10-3)

Page 7

TN

*J L B*

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073545

0045980938

jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.   BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.   LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B), enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.   INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment.

**19.   CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.   LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.   WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.   CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

SD016H (2004-10-7)                    Page 8                    TN

0045950938

23.   MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

24.   CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)   If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

(B)   The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)   If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)   I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

SD616 (2004-10 3)                              Page 9                                           TN

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073545

0048950938

**25.   FUTURE ADVANCES**

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

**26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

THIS SPACE INTENTIONALLY LEFT BLANK,

**27.   SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

**28.   RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

SD018J (2004-10-3)   LP01 (2006-06-1))                                                   TN

Page 10

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073546

0045950938

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's Breach of Duty (but not prior to acceleration under paragraph 28 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 28, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by applicable law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided by paragraph 14. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this Paragraph 28, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

29.   RELEASE
Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

30.   STATEMENT OF OBLIGATION
Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

31.   WAIVERS
Borrower waives all right of homestead, equity of redemption, statutory right of redemption and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

SD818K (2004-10-2)                                Page 11                                          TN

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073545

0045950936

32.   ( X )   QUICK QUALIFYING LOAN PROGRAM
I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) if I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

33.   ( X )   OWNER OCCUPANCY
Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

SD454L (2004-1-D2)   JL01 (2008-08-1)I                    Page 12                                        TN

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073545

0045950930

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_John L. Bullock_ (Seal)

JOHN L BULLOCK

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD616 (2004-03-1)     [WFB (2004-03-1)]     Page 13     TN
                      [WLI (2004-03-1)]

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073545

STATE OF TENNESSEE
COUNTY OF SHELBY

On this 25th day of April, 2007, before me, a Notary Public in the state and
county aforesaid, duly commissioned and qualified, personally appeared John L. Bullock,
to me known to be the person described in and whom executed the same as his free act
and deed and for the purposes herein contained.

WITNESS my hand and Notarial Seal at the day and date first above written.

Sharon D. Bishop

Notary Public

My commission expires: 12/28/10

SHARON D. BISHOP
STATE
OF
TENNESSEE
NOTARY
PUBLIC
SHELBY COUNTY

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073545

Exhibit "A"

Lot 63, Raleigh Heights Subdivision, Section A Subdivision, as shown on plat of record in Plat Book 59, Page 13, in the Register's Office, Shelby County, Tennessee, to which plat reference is hereby made for a more particular description of said property.

Being the same property conveyed to John L. Bullock, unmarried, by Warranty Deed recorded in Instrument No LG6912 recorded in the Register's Office of Shelby County, Tennessee.

Parcel No. 085-006-00019

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073546



Exhibit B

## *Tom Leatherwood*
### Shelby County Register

As evidenced by the instrument number shown below, this document
has been recorded as a permanent record in the archives of the
Office of the Shelby County Register.



Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073546

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

Prepared By:
~~WHEN RECORDED MAIL TO:~~
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0045950946

*Return To:*

PROFESSIONAL
TITLE & ESCROW, LLC
6800 Poplar Ave., Suite 125
Memphis, TN 38138

FOR RECORDER'S USE ONLY

OPEN END DEED OF TRUST
(SECURING FUTURE ADVANCES)
THIS DEED OF TRUST IS SECURITY FOR AN EQUITY LINE OF CREDIT AGREEMENT AND
DISCLOSURE STATEMENT MATURING NO LATER THAN May 15, 2037.

MAXIMUM PRINCIPAL INDEBTEDNESS FOR TENNESSEE RECORDING TAX PURPOSES
IS 15,750.00 DOLLARS.

THIS DEED OF TRUST (herein called the "Security Instrument") is made this 25th day of April,
2007, among the Trustor, JOHN L BULLOCK, AN UNMARRIED MAN (herein "Borrower"), J.
Franklin McCreary, a resident of Williamson County (herein "Trustee"), and the Beneficiary,
WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, and whose address is
1901 Harrison Street, Oakland, CA 94612 (herein "Lender").

PURSUANT TO an Equity Line of Credit Agreement and Disclosure Statement dated April 25,
2007 (herein "Note"), Borrower may incur maximum unpaid loan indebtedness (exclusive of interest
thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at any
time of FIFTEEN THOUSAND SEVEN HUNDRED FIFTY AND 00/100 Dollars (U.S. $15,750.00),
which is due and payable, if not sooner paid, no later than the 30th anniversary of the opening of the
Equity Line of Credit.

BORROWER, IN consideration of the indebtedness herein recited and the trust herein created,
irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described
property located in the County of SHELBY State of TENNESSEE SEE EXHIBIT "A," ATTACHED
HERETO AND INCORPORATED BY REFERENCE HEREIN, which has the address of 3336
DURFORD WOOD COVE, MEMPHIS, TN 38128-3426 ("Property Address"):

The instrument constituting the source of the Borrower's interest in the foregoing described
property was a                                                   recorded at Book
Page                        under Instrument No.
in the Register's Office of SHELBY County, Tennessee.

SD8IDA2 (2004-10-3)                Page 1                TN             LENDER'S USE ONLY
£1.00

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073548

0045950946

TO HAVE AND TO HOLD, the aforedescribed property, together with all the hereditaments and appurtenances thereunto belonging to, or in anywise appertaining, unto the Trustee, its successors in trust and assigns, in fee simple forever.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, fixtures and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Security Instrument; and all of the foregoing, together with said property (or the leasehold estate if this Security Instrument is on a leasehold) are hereinafter referred to as the "Property";

TO SECURE to Lender (a) the repayment of all sums now or hereafter advanced under the terms of the Note (including, without limitation, such sums that are advanced by Lender whether or not at the time the sums are advanced there is any principal sum outstanding under the Note), with interest, and all renewals, extensions and modifications of the Note, (including, without limitation, any modifications that increase the Credit Limit of the Note), this subsection (a) being collectively included within the term "Note" in this Security Instrument; (b) the payment of all other sums, with interest, advanced under this Security Instrument to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

1.   Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and all other charges due under this Security Instrument and due under the Note. Payments due under the Note and this Security Instrument shall be made in U.S. Dollars by check or money order. If any check or other instrument received by Lender as payment is returned to Lender unpaid, Lender may (a) charge Borrower the non-sufficient funds (NSF) fee specified in the Note or, if the Note does not specify any such fee amount, an amount not to exceed the maximum NSF charge permitted by applicable law; and (b) require that any or all subsequent payments be made by money order or with certified funds. If Borrower is in default, Lender may require Borrower to make any payment needed to cure the default by money order or with certified funds. "Certified funds" means a certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 12. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payment(s) are insufficient to bring Borrower's obligations current. Lender may accept any payment(s) or partial payment(s) insufficient to bring the Borrower's obligations current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payment(s) in the future.

2.   Funds for Escrow Items. At loan origination or at any time thereafter, Lender may require that Borrower pay to Lender on the day periodic payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) condominium or homeowners association dues, fees and assessments, if any. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 2. Any waiver by Lender of Borrower's obligation to pay Funds to Lender may only be in writing.

6D45083 (2004-10-2)                                Page 2                                TN
R100

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073546

0045950946

When Borrower is not required to pay for Escrow Items by paying Funds to Lender, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. If Borrower is obligated to pay Escrow Items directly and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 7 and pay such amount and Borrower shall then be obligated under Section 7 to repay to Lender any such amount. Lender may require that Borrower then pay to Lender Funds for any or all Escrow Items by a notice given in accordance with Section 12, and Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 2.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et. seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they or any successor legislation or regulation might be amended from time to time ("RESPA") and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires Lender to pay interest on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument Lender shall promptly refund to Borrower any Funds held by Lender. If under Section 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

3.   Application of Payments. Unless the Note or applicable law requires otherwise, Lender will apply payments received under Sections 1 and 2 in the order selected by Lender.

4.   Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property (including, without limitation, all dues, fees, assessments and other charges that are imposed on the Property by any applicable condominium association, homeowners association or similar organization), which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any.

# D6500 (2004-10-1)                              Page 3                              TN

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073546

0045950946

Borrower agrees that Borrower will not obtain any additional advances, whether voluntary or involuntary, or allow any modification or extension of any loan secured by a lien or other encumbrance with a priority senior to this Security Instrument without the prior written consent of Lender. Violation of this provision shall constitute a default under this Security Instrument entitling Lender to all rights and remedies afforded herein, in law or equity, including but not limited to, acceleration of the loan.

Borrower further agrees to deliver to Lender any notices that Borrower receives from the holder of any such senior lien or encumbrance.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this loan.

5.  Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this loan, a one-time charge for flood zone determination and certification and a one-time charge for tracking services. Borrower also shall be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense, pursuant to Section 7 below. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance coverage that Borrower could have obtained.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage not otherwise required by Lender, such as credit life and/or disability insurance or earthquake or other hazard insurance for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

If the Property is a unit in a condominium, cooperative or planned unit development (the "Project") and the Project is covered by a master or blanket policy maintained by the Project's owners association, in the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was specifically required by Lender, in lieu of restoration or repair following a loss to the Property and/or the Project, any proceeds payable to Borrower and/or Lender for a loss to the Property are hereby assigned and shall be paid to Lender for application to sums secured by this Security Instrument, with any excess paid to Borrower. Borrower shall take such actions as may be reasonable to insure that the Project's owners association maintains a public liability insurance policy acceptable to Lender.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion regardless of any impairment or lack of

0045950946

impairment of any security, as follows: (a) to the extent allowed by applicable law, to the sums secured by this Security Instrument in a manner that Lender determines and/or (b) to restoration or repair of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender. During any repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or applicable law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 17 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund or unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

If any insurance proceeds are used to reduce the amount of principal owing to Lender under the Note, that use will not delay the due date or change the amount of regularly scheduled payments under the Note, unless Lender and Borrower agree to such delay or change in writing.

6.  Preservation and Maintenance of Property; Assignment of Rights for Injury to Property. Borrower shall keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations, not commit waste or permit impairment or deterioration of the Property, comply with the provisions of any lease if this Security Instrument is on a leasehold, and, if this Security Instrument is on a unit in a Project, (a) perform all of Borrower's obligations under the declaration or covenants creating or governing the Project, the by-laws and regulations of the Project, and constituent documents, and (b) pay when due all dues, fees, assessments and other charges that are imposed on Borrower or the Property by the condominium association, homeowners association or similar organization.

An assignment is a transfer of rights to another. Borrower may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. Borrower assigns these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to sums secured by this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, Borrower will sign any further assignments or other documents that may be necessary to enforce this assignment.

7.  Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or if any action or proceeding is commenced which might materially affect Lender's interest in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or ordinances), or if Borrower abandons the Property, then Lender may do and pay for whatever it deems reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Section 5 above (such insurance may cost more and provide less coverage than the insurance Borrower might purchase), and paying any sums secured by a lien which has priority over

(Page 36 of 39)

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073546

0045950946

this Security Instrument. Any amounts disbursed by Lender under this Section 7 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment. Nothing contained in this Section 7 shall require Lender to incur any expense or take any action hereunder.

Lender also may charge Borrower fees for services performed in connection with Borrower's default for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by applicable law.

If Lender required mortgage insurance as a condition of making the loan, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

In the event Borrower is subject to a bankruptcy proceeding and delinquent amounts owing under the Note and/or this Security Agreement are to be paid according to a plan requiring approval of the bankruptcy court, Borrower agrees that such bankruptcy plan shall provide for interest on all delinquent amounts being paid through the plan (including, without limitation, principal, interest or periodic finance charges, fees and charges under the Note, and Lender advances, fees and charges under this Security Instrument) at the then current rate of interest provided in the Note.

8.   Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause for the inspection.

9.   Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

10. Borrower Not Released; Forbearance By Lender Not a Waiver; No Offset. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of Section 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Security Instrument, but does not execute the Note, (a) is co-signing this Security Instrument only to grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally liable on the Note or under this Security Instrument, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Security Instrument or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Security Instrument as to that Borrower's interest in the Property.

12. Notice; Notice of Grievance. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower at the Property Address or at such other single address as Borrower may designate by notice to Lender as

80450F (2004-10-1)                                              Page 6                                              TN

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073546

0045950946

provided herein, and (b) except as permitted below for changes of address, any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other single address as Lender may designate by notice to Borrower as provided herein.  Borrower may give notice to Lender of a change of Borrower's address in writing or by calling Lender's customer service telephone number provided on Borrower's billing statement. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with this Section 12) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If applicable law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 12.

13. Governing Law; Severability; Loan Charges. This Security Instrument shall be governed by federal law, rules, and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

If a law which sets maximum loan charges is finally interpreted so that such law is applicable to Lender and that the interest or other loan charges collected or to be collected in connection with the Note or the Security Instrument exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

14. Borrower's Copy; Modification; Clerical Errors; Replacement Documents. Borrower shall be furnished a conformed copy of the Note and of this Security Instrument at the time of execution or after recordation hereof. The Note and/or this Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender. In the event Lender at any time discovers that the Note and/or this Security Instrument contains an error caused by a clerical mistake or calculation, computer, printing or similar error, Borrower agrees to reexecute the document(s) containing the error and to hold Lender harmless for any such error. If any document evidencing this loan is lost, stolen, mutilated or destroyed, and Lender delivers a signed indemnification in Borrower's favor, then Borrower agrees to sign and deliver to Lender a replacement document identical in form and content which will have the effect of the original for all purposes.

16. Borrower's Loan Application. Borrower shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note.

Lender extended Borrower this loan in reliance upon Borrower's representation in the loan application that Borrower intends to occupy the Property as Borrower's principal residence. Lender may have provided Borrower more favorable loan terms, such as a lower interest rate in the Note or a higher loan-to-value, than otherwise would have been made available in the absence of Borrower's representation. Borrower agrees to occupy, establish and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and to continue to occupy the Property as Borrower's principal residence for at least one year thereafter, unless extenuating circumstances exist which are beyond Borrower's control.

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073546

0045950946

16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Federal Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

17. Acceleration; Remedies. Borrower will be in default if (a) the full minimum payment due under the Note, or any other payment required by the Note or this Security Instrument, is not made when it is due; (b) Borrower has engaged in fraud or made a material misrepresentation at any time in connection with the equity account evidenced by the Note; (c) Borrower takes any action or fails to take any action that adversely affects the Property or Lender's rights in the Property. If a default occurs (other than under Section 16 unless otherwise required by applicable law), Lender shall give notice to Borrower prior to acceleration. The notice shall specify: (1) the default; (2) the action required to cure such default; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such default must be cured; and (4) that failure to cure such default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Security Instrument to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this Section 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by applicable law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Section 12. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this Section 17, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Security Instrument due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Security Instrument discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Security Instrument or at any time prior to entry of a judgment enforcing this Security Instrument if: (a) Borrower pays Lender all sums which would be then due under this Security Instrument and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 07073546

0045950946

contained in this Security Instrument; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Security Instrument, and in enforcing Lender's and Trustee's remedies as provided in Section 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unimpaired. Upon such payment and cure by Borrower, this Security Instrument and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred. However, the right to reinstate shall not apply in the case of acceleration under Section 16.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, and to the extent permitted by applicable law, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under Section 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under Section 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, maintenance and repairs of the Property, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument. Lender and the receiver shall be liable to account only for those rents actually received.

20. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower will pay all recordation costs. Lender also may charge Borrower a reasonable fee for releasing this Security Instrument, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

21. Substitute Trustee. Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

22. Statement of Obligations. Lender may collect a fee of $40.00 for furnishing a statement of obligation, payoff demand statement, or any similar statement. Lender will deliver such statement by first class mail. If Lender is requested by Borrower or Borrower's agent to deliver such statement by facsimile transmission, Lender may collect a special handling charge of $10 for each such delivery and need not send a copy of such statement by first class mail.

23. Waivers. Borrower waives all rights and benefits of homestead, equity of redemption, statutory right of redemption and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

SC65X (2004-10-3)                    Page 9                    TN

Exhibit C

**WARRANTY DEED**

Prepared by and return to:
Orange & Hood, PLLC
6750 Poplar Avenue, #419
Memphis, TN 38138

THIS INSTRUMENT WAS PREPARED BY
Danny Goulder, Attorney at Law
P.O. Box 1246, 55 College Street
Munford, Tennessee 38058

THIS INDENTURE, made and entered into as of the **24th** day of **July**, 2001 by and between

WILLIAM F. HAKES and MARY LOU HAKES, husband and wife , hereinafter referred to as Grantor, and

JOHN L. BULLOCK *unmarried* , hereinafter referred to as Grantee.

WITNESSETH: That for and in consideration of Ten Dollars ($10.00), cash in hand paid, and other good and valuable considerations, the receipt of all of which is hereby acknowledged, the said Grantor has bargained and sold and does hereby bargain, sell, convey and confirm unto the said Grantee the following described real estate, situated and being in the County of **Shelby**, State of Tennessee:

Lot 63, Section A Raleigh Heights Subdivision, as shown on plat of record in Plat Book 59, Page 13 in the Register's Office of Shelby County, Tennessee, to which plat reference is hereby made for a more particular description of said lot.

Subject to subdivision restrictions, building lines and easements at Plat Book 59, Page 13 in the Shelby County Register's Office.

Being the same property conveyed to William F. Hakes at Instrument No. DT 9789 in the Shelby County Register's Office. See Deed to Create Tenants by the Entireties at Instrument No. DX 3762 in the Shelby County Register's Office.

TO HAVE AND TO HOLD The aforesaid real estate, together with all the appurtenances and hereditaments thereunto belonging or in any wise appertaining unto the said Grantee, his/her heirs, successors and assigns in fee simple forever.

The said Grantor does hereby covenant with the Grantee that the Grantor is lawfully seized in fee of the aforedescribed real estate; that the Grantor has a good right to sell and convey the same; that the same is unencumbered and that the title and quiet possession thereto Grantor will warrant and forever defend against the lawful claims of all persons.

Whenever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

WITNESS the signature of the Grantor (or caused its corporate name to be signed hereto by and through its proper officers duly authorized so to do) the day and year first above written.

_William F. Hakes_
WILLIAM F. HAKES

_Mary Lou Hakes_
MARY LOU HAKES

STATE OF TENNESSEE )
COUNTY OF **Tipton** )

Personally appeared before me, the undersigned Notary Public of the aforesaid County and State, WILLIAM F. HAKES and MARY LOU HAKES, the within named bargainor, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that they executed the within instrument for the purposes therein contained.

Witness my hand, at office, this **24th** day of **July**, 2001.

_Danny Goulder_
Notary Public

Commission Expiration: **8-9-2004**

Tom Leatherwood, Shelby County Register of Deeds for LG6912

**STATE OF TENNESSEE**
**COUNTY OF** Tipton

## VALUATION AFFIDAVIT

I, or we, hereby swear or affirm that, to the best of affiant's knowledge, information, and belief, the actual consideration for this transfer or value of the property transferred, whichever is greater is $ 84980.00 which amount is equal to or greater than the amount which the property transferred would command at a fair and voluntary sale.

W.J.H. William F. Hekes
Affiant

Subscribed and sworn to before me this 24th day of July, 2001.

Nancy Snell
Notary Public

Commission Expiration: 8-9-2004

| RETURN TO: | SEND TAX BILLS TO: | PROPERTY ADDRESS: |
|---|---|---|
| Danny Goulder, Attorney at Law | JOHN L. BULLOCK (owner) | 3336 Durford Wood Cove |
| 55 College Street P.O. Box 1245 | | Memphis, TN 38128 |
| Munford, Tennessee 38058 | 3336 Durford Wood Cove | Lot 58 Sec. A Raleigh Heights |
| | Memphis, TN 38128 | Ward 85 Block 5 Par. 19 |
| | | Parcel — |

01-0716

LG6912
08/30/2001-13:48:43

| TYPE: Transfer Warranty Deed | | |
|---|---|---|
| W/C  J - DEURRE HEKE | | 11 |
| TRANSFER VALUATION | | 84,980.00 |
| TN MORTGAGE TAX | N/A | |
| TN TRANSFER TAX | | 314.15 |
| RECORDING FEE | | 10.00 |
| DP FEE | | 2.00 |
| REGISTER'S FEE | | 1.00 |
| WALK THRU FEE | N/A | |
| TOTAL AMOUNT | | 328.13 |
| PAGE COUNT:    2 PAGE ADDED: No  GROUP ID: X000025017 | | |

STATE of TENNESSEE, COUNTY of SHELBY
Tom Leatherwood, REGISTER

Exhibit D



October 05, 2009                         Wachovia Loan Number: 0045950938

WACHOVIA

John L Bullock
3336 Durford Wood Cv
Memphis, TN 38128 3426


Re: Notice of Transfer of Mortgage

Dear John L Bullock :

We're writing to provide important information about a transfer of
ownership on the mortgage referenced above.

According to recently enacted federal law, each "new owner" of a mortgage
is required to send a notice regarding any transfers of ownership.
Please understand that these transfers are a normal business practice,
and they do not affect any of the terms of your mortgage or the servicing
of your mortgage.

On October 2, 2009, Wachovia resumed ownership of your mortgage and is
therefore considered a "new owner." Wachovia continues to be the
servicer of the mortgage.  This notice does not change the servicing of
your mortgage. Due to the nature of the previous transfer, a transfer of
ownership of the debt was not recorded and is not required to effect
the transfer back to Wachovia.

Should you have any questions, we can be reached as follows:

                    Wachovia Mortgage
                    4101 Wiseman Blvd
                    San Antonio, TX 78251

You may also contact our Customer Service Center at 800-642-0257.  A
representative is available to assist you Monday through Friday, 9:00
a.m. to 9:00 p.m., and Saturday, 9:00 a.m. to 6:00 p.m., Eastern Time.

Customer Service
Loan Service Department


QA988 006 LAV

Exhibit E



October 14, 2009

WACHOVIA

032437 LWQ1T282 LW11740S
JOHN BULLOCK
3336 DURFORD WOOD CV
MEMPHIS        TN 38128-3426

Re: XXXXX50946

Dear Customer:

As you may have heard, Wachovia Corporation, the parent company of Wachovia Mortgage, FSB, is now part of Wells Fargo & Company. As a result, subject to regulatory approval, on November 1, 2009, Wachovia Mortgage, FSB, will merge with Wells Fargo Bank, N.A. and become Wachovia Mortgage, a division of Wells Fargo Bank, N.A.

This change will not affect any terms or conditions of the mortgage, including the account number and payment amount. Payment processing will remain the same and payments can continue to be made to Wachovia Mortgage through normal payment method(s).

As we complete this integration, our goal is to maintain the highest level of service for both the mortgage loan and other accounts. We appreciate your business and look forward to providing products and services that will meet all of your financial needs and goals. If you have any questions about this merger or the servicing of the loan, please call us at 800-642-0257 Monday through Friday, 9 a.m. to 9 p.m., and Saturday, 9 a.m. to 6 p.m., ET.

Sincerely,

*Mary C. Reeder*

Mary C. Reeder
Senior Vice President
Wachovia Mortgage

IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

John L Bullock
    Plaintiff/Petitioner,        )
                               )
                               )
Vs.                          )     CASE NO. CH 10-0916-1
                               )     JURY DEMAND
WORLDS SAVINGS BANK, FSB      )
                               )
WACHOVIA MORTGAGE          )
SENIOR VICE PRESIDENT MARY C REEDER  )
                               )
THE CITY OF MEMPHIS           )
PAMELA POPE JOHNSON         )
MELISSA PALO                  )
                               )
    RESPONDENTS.           )
                               )

---

## INTERROGATORIES PROPOUNDED BY PLANTIFF

---

Respondents/Defendants Interrogatories
Pursuant to Tennessee Civil Rule of Procedure, Section 33 – Interrogatories to parties and local
Shelby County, Chancery Rule – 26.

## INTERROGATORIES TO PARTIES

1.   Interrogatory         NAME OF ALLEGED DEBT COLLECTOR/CREDITOR?
    ...................................................................................................

2.   Interrogatory         Address of alleged Debt Collector/Creditor?
    ...................................................................................................

3.   Interrogatory         Correct Lawful Name of Living Being, alleged Debtor/Obligor?
    ...................................................................................................

1

4.  Interrogatory               Is Wachovia Mortgage, FSB required to register with the United States Department of Treasury as a financial Institution? ...........................................................

5.  Interrogatory               Will you please provide the Documents that certify that Wachovia Mortgage, FSB is a financial institution registered with the federal government through the United States Department of Treasury

.................................................................................

6.  Interrogatory               Has Wachovia Mortgage, FSB exchanged the alleged conformed note for bonds from the United States Treasury?

...............................................................................

7.  Interrogatory               Have the directors of Wachovia Mortgage, FSB sworn an oath to follow the laws governing Banks which are The National Bank Act Statutes at large Public Laws of United States Congress Published at Volume 13, 38th Congress Stat 99-118?

...............................................................................

8.  Interrogatory               Will you please provide a certified copy of the oath of office for any and all Wachovia Mortgage, FSB employees responsible for assigning any and all deeds of trust related to instrument 07073545 and 07073546?

...............................................................................

9.  Interrogatory               Is Wachovia Mortgage, FSB aware they are in violation of the statutes at large in any manner?

...............................................................................

10. Interrogatory               Is the conformed note and mortgage security interest lien in this contract for more than 5 years?

...............................................................................

11. Interrogatory               And if so how long is the mortgage?

...............................................................................

12. Interrogatory               Is Wachovia Mortgage, FSB aware that pursuant to the above federal law any mortgage longer than 5 years is unlawful?

...............................................................................

13. Interrogatory               Is Wachovia Mortgage, FSB aware that according to the Original Note they are not the Owner of the Property?

...............................................................................

14. Interrogatory               Are you Wachovia Mortgage, FSB aware that violating any part of The Statutes at large 38th Congress 1864, Volume 13, Stat 99-118 that your financial institution can be shutdown?

...............................................................................

15. Interrogatory               Will you please provide a list of the directors or agents of Wachovia Mortgage, FSB responsible for any and all deed of trust assignments regarding

negotiable instrument, 07073545 and 07073546?

16. Interrogatory            Address of alleged Debtor/Obligor:

17. Interrogatory            Alleged Account Number(s):

18. Interrogatory            Alleged debt owed:
    $.

19. Interrogatory            Date alleged debt became payable:

20. Interrogatory            What is the name and address of the alleged Original Creditor who actually provided funds to the alleged Debtor/Obligor, if different from alleged Debt Collector/Creditor?

21. Interrogatory            If Debt Collector/Creditor is different from alleged Original Creditor, does Debt Collector/Creditor have a bona fide affidavit of assignment that possesses the signature of the alleged Debtor/Obligor as an assignment for entering into alleged original contract between alleged Original Creditor and alleged Debtor/Obligor?

22. Interrogatory            Did Wachovia Mortgage, FSB purchase this alleged account from the alleged Original Creditor?

23. Interrogatory            Is Wachovia Mortgage, FSB the holder of the original conformed note/security instrument?

24. Interrogatory            Has the alleged Debt Collector/Creditor provided alleged Debtor/Obligor with the requisite *verification* of the alleged debt as required by the *Fair Debt Collection Practices Act*?

25. Interrogatory            Are their any stocks, bonds, or securities attached to the contract between Wachovia Mortgage, FSB and the alleged obligor?

26. Interrogatory            Does there exist a verifiable, bona fide, original conformed commercial instrument 07073545 and 07073546 between alleged Debt Collector/Creditor and alleged Debtor/Obligor containing alleged Debtor/Obligor's bona fide signature?

3

27. Interrogatory        Does there exist, verifiable evidence of an exchange of a benefit or detriment between Debt Collector/Creditor and alleged Debtor/Obligor?
..........................................................................................................................................

28. Interrogatory        Is this account, 07073545 and 07073546, connected to any Trust agreements?
..........................................................................................................................................

29. Interrogatory        Is this account, 07073545 and 07073546, in any way connected to any other instrument and/or security?
..........................................................................................................................................

30. Interrogatory        If the transfer of rights regarding this alleged account was by assignment, if so was there consideration afforded to the debtor/obligor?
..........................................................................................................................................

*Johnn L. Bullock*

Johnn L Bullock
3336 Durford Wood Cove
Memphis, Tennessee 38128
901-386-1788

## Certificate of Service

I, Johnn L Bullock, Plaintiff/Petitioner, do hereby certify that a copy of the foregoing petition for action to quiet title was delivered via the Secretary of the State of Tennessee, to World Savings Bank, FSB 4101 Wiseman Boulevard, San Antonio, TX 78251, to Wachovia Mortgage, FSB located at 4101 Wiseman Boulevard, San Antonio, TX 78251 and THE CITY OF MEMPHIS, and their Agents Linebarger Goggan Blair & Sampson, LLP, One Commerce Square, 40 South Main Street, Suite 2250, Memphis, Tennessee 38103, C/O Pamela Pope Johnson and Melissa Palo, this 19th day of May, 2010.

*Johnn L. Bullock*

Johnn L Bullock
3336 Durford Wood Cove
Memphis, Tennessee 38128
901-386-1788

4

| STATE OF TENNESSEE 30th JUDICIAL DISTRICT CHANCERY COURT AT MEMPHIS | **SUMMONS** | DOCKET NUMBER CH- 10- 0916-1 |
|---|---|---|

Plaintiff John L. Bullock

Defendant World Savings Bank, FSB
Wachovia Mortgage, FSB
Senior Vice President Mary C. Reed or
The City of Memphis, Pamela Pope Johnson, Melissa Palo

**TO:   (NAME AND ADDRESS OF DEFENDANT)**

Wachovia Mortgage, FSB
C/o Senior Vice President
Mary C. Reeder
4101 Wiseman Boulevard
San Antonio, TX 78251

**Method of Service:**

☐ Certified Mail
☐ Shelby County Sheriff
☐ Comm. Of Insurance*
☒ Secretary of State*
☐ Out of County Sheriff*
☐ Private Process Server
☐ Other
*Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your answer to this action must be made within thirty (30) days from the date this summons is served upon you.  You must file your answer with the Clerk of the Court and send a copy to the plaintiff's attorney at the address listed below.  If you fail to defend this action within thirty (30) days of service, judgment by default can be rendered against you for the relief sought in the complaint.

| Attorney for plaintiff or plaintiff if filing Pro Se: (Name, address & telephone number)

John L. Bullock
3336 Durford Wood Cove
Memphis, Tennessee 38128 | ISSUED 2nd May , 20 10

Dewun R. Settle, Clerk and Master
By: _____
Deputy Clerk & Master |
|---|---|

| TO THE SHERIFF: | Came to hand _____ day of _____ 20 ___

Sheriff |
|---|---|

SECRETARY OF STATE 2010 MAY 24 AM 11:2

**Submit one original and one copy for each defendant to be served.

! Questions regarding this summons and the attached documents should be addressed to the Attorney listed above.

✆ For ADA assistance only, call (901) 379-7895

09/18/07

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows:  (Name of Party Served) _____

☐ Served _____          ☐ Not Found _____
☐ Not Served _____      ☐ Other _____
the defendant

| DATE OF RETURN: This _____ day of _____, 20____. | By: _____ <br> Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20____, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH-_____ to

the defendant _____. On the _____ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| Sworn to and subscribed before me on this _____ day of _____ <br> _____, 20___. <br> Signature of ____ Notary Public or ____ Deputy Court Clerk <br><br> My Commission Expires: | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

    Tennessee law provides a four thousand dollar ($4,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment.  If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court.  The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list.  Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books.  Should any of these items be seized you would have the right to recover them.  If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Mail list to:  Clerk & Master
                140 Adams Ave.
                Room 308
                Memphis, TN 38103

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| I, Dewun R. Settle, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | Dewun R. Settle, Clerk & Master <br> By: _____ D.C. & M. |

09/18/07

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

WACHOVIA MORTGAGE, FSB
C/O MARY C REEDER
4101 WISEMAN BLVD
SAN ANTONIO, TX 78251

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
JUN 0 1 2010

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7009 0960 0000 1473 2890

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

(Page 1 of 39)

45950938

JUN 0 2 2010

**HQ Liaison**



State of Tennessee

**Department of State**

Division of Business Services
312 Rosa L Parks Ave
6th Floor Wm. R. Snodgrass Tower
Nashville, Tennessee 37243

5/26/2010                    70090960000114732890
Date                              Certified Number

File No:     CH-10-0916-1

Company:    **WACHOVIA MORTGAGE, FSB**

Name:

Agent/POE:   C/O MARY C REEDER

Address:     4101 WISEMAN BLVD
             SAN ANTONIO, TX 78251

Country:

RE:     JOHN L BULLOCK

VS:     WORLD SAVINGS BANK, ET AL.

## Notice of Service

The enclosed summons and attachments are hereby officially served upon you by the Office of the Tennessee Secretary of State pursuant to Tennessee Law. Please refer to the summons and attachments for details concerning the lawsuit filed against you. If you have any questions, please contact the clerk of the court which issued the summons. You can obtain the court's telephone number by calling information (area code) 555-1212. The name of the court and county where the court is located will be on the attached summons.

The summons will either tell you a court date and time at which you must appear to defend yourself or tell you the number of days from the day you are served within which you must file an answer upon the plaintiff's attorney. Failure to appear in court at the time specified or failure to answer the summons within the given time could result in a judgement by default being rendered against you for relief sought in the lawsuit.

The Secretary of State's Office cannot give you legal advice. If you need legal advice, please consult a private attorney.

Sincerely,

_Tre Hargett_

Tre Hargett
Secretary of State

enclosures
Initial: MMH
CC:

SS-4214 (Rev. 3/97)                                    RDA 1003



## State of Tennessee
### Department of State
Division of Business Services
312 Rosa L Parks Ave
6th Floor Wm. R. Snodgrass Tower
Nashville, Tennessee 37243

Case Number:  CH-10-0916-1

6/7/2010
Date

70090960000114732890

Certifed Number

HON. DEWUN R. SETTLE
SHELBY COUNTY-CHANCERY COURT
140 ADAMS ST.,RM.308
MEMPHIS, TN 38103

**RE:**   JOHN L BULLOCK

**VS:**   WORLD SAVINGS BANK, ET AL.

**Dear Clerk:**

Enclosed are the following papers in the above styled case:

☑   Original Summons

☑   Affidavit and Endorsement

☑   Registered or Certified Return Receipt signed by:

SEE CARD

☐   Registered or Certified letter returned undelivered with notation:

Sincerely:

*Tre Hargett*

Tre Hargett

enclosures

Initials:  MMH
CC:

SS-4210 (Rev. 12/96)                                            RDA No. 1003

AFFIDAVIT
and
ENDORSEMENT

6/7/2010
Date

Case Number:   CH-10-0916-1

70090960000114732890
Certified Number

RE:    JOHN L BULLOCK

VS:    WORLD SAVINGS BANK, ET AL.

I    **DARLENE LAWRENCE**    , having been duly authorized by Tre Hargett, Secretary of State
of Tennessee, do hereby make oath on his behalf and under authorization as follows :
    That    on    Tuesday, May 25, 2010    , I received from the plaintiff the original
and certified copies of the Summons and Complaints issued against the defendant :
    **C/O MARY C REEDER**
**WACHOVIA MORTGAGE, FSB**

whose address is:
4101 WISEMAN BLVD, SAN ANTONIO, TX 78251
and that on    Wednesday, May 26, 2010    , I mailed by registered or certified return-
receipt mail the certified copies of the Summons and Complaint to the defendant at the above ad-
dress together with written notice that service was so made. I further make oath that the return
receipt for the registered or certified letter was received at my office in Nashville, Tennessee, on

**Monday, June 07, 2010**    , and returned to    SHELBY COUNTY-CHANCERY COURT

of    MEMPHIS    , Tennessee on    **Monday, June 07, 2010**



Tre Hargett
Secretary of State

by

Subscribed and sworn to before me,

this 7TH    day of JUNE    , 2010

NOTARY PUBLIC

My commission expireS   9-8-2013



SS-4201 (Rev. 2/90)

| STATE OF TENNESSEE 30th JUDICIAL DISTRICT CHANCERY COURT AT MEMPHIS | **SUMMONS** | DOCKET NUMBER CH- 10 — 0916-1 |
|---|---|---|

| Plaintiff John L. Bullock | Defendant World Savings Bank, FSB Wachovia Mortgage, FSB senior vice President Mary C. Reeder The City of Memphis, Pamela Pope Johnson, Melisa Polo |
|---|---|

**TO:   (NAME AND ADDRESS OF DEFENDANT)**

World Savings Bank, FSB
4101 Wiseman Boulevard
San Antonio, TX 78251

Method of Service:

- [ ] Certified Mail
- [ ] Shelby County Sheriff
- [ ] Comm. Of Insurance*
- [x] Secretary of State*
- [ ] Out of County Sheriff*
- [ ] Private Process Server
- [ ] Other

*Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your answer to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your answer with the Clerk of the Court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default can be rendered against you for the relief sought in the complaint.

| Attorney for plaintiff or plaintiff if filing Pro Se: (Name, address & telephone number) John L. Bullock 3336 Durford Wood Cove Memphis, Tennessee 38128 | ISSUED 20 of May , 20 10 |
|---|---|
| | Dewun R. Settle, Clerk and Master By: _____ Deputy Clerk & Master |

| TO THE SHERIFF: | Came to hand |
|---|---|
| | _____ day of _____ |
| | Sheriff |

**Submit one original and one copy for each defendant to be served.

! Questions regarding this summons and the attached documents should be addressed to the Attorney listed above.

For ADA assistance only, call (901) 379-7895

09/18/07

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) _____

☐ Served _____     ☐ Not Found _____
☐ Not Served _____     ☐ Other _____

| DATE OF RETURN: This _____ day of _____, 20___. | By: _____ |
| | Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH-_____ to

the defendant _____. On the _____ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of ____ _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| Sworn to and subscribed before me on this _____ day of _____ _____, 20___. | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
| Signature of ____ Notary Public or ____ Deputy Court Clerk | |
| My Commission Expires: | |

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):
   Tennessee law provides a four thousand dollar ($4,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

   Mail list to: Clerk & Master
                 140 Adams Ave.
                 Room 308
                 Memphis, TN 38103

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| I, Dewun R. Settle, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | Dewun R. Settle, Clerk & Master By: _____ |

09/18/07





## State of Tennessee

### Department of State

Division of Business Services
312 Rosa L Parks Ave
6th Floor Wm. R. Snodgrass Tower
Nashville, Tennessee 37243

Case Number:   <u>CH-10-0916-1</u>

<u>6/7/2010</u>
Date

<u>70090960000114741625</u>
Certifed Number

HON. DEWUN R. SETTLE
SHELBY COUNTY-CHANCERY COURT
140 ADAMS ST., RM.308
MEMPHIS, TN 38103

RE:   JOHN L. BULLOCK

VS:   WORLD SAVINGS BANK, FSB

Dear Clerk:

Enclosed are the following papers in the above styled case:

☑   Original Summons

☑   Affidavit and Endorsement

☑   Registered or Certified Return Receipt signed by:

<u>**SEE ENCLOSED CARD**</u>

☐   Registered or Certified letter returned undelivered with notation:

Sincerely:

Tre Hargett

enclosures

Initials:   KDF
CC:

SS-4210 (Rev. 12/96)                                                    RDA No. 1003

**AFFIDAVIT**
**and**
**ENDORSEMENT**

**6/7/2010**
Date

Case Number:  CH-10-0916-1

7009096000114741625
Certified Number

RE:     JOHN L. BULLOCK

VS:     WORLD SAVINGS BANK, FSB

I   **DARLENE LAWRENCE**   , having been duly authorized by Tre Hargett, Secretary of State of Tennessee, do hereby make oath on his behalf and under authorization as follows :
    That on   Tuesday, May 25, 2010   , I received from the plaintiff the original and certified copies of the Summons and Complaints issued against the defendant :

**WORLD SAVINGS BANK, FSB**

whose address is:

4101 WISEMAN BLVD., SAN ANTONIO, TX 78251
and that on   Wednesday, May 26, 2010   , I mailed by registered or certified return-receipt mail the certified copies of the Summons and Complaint to the defendant at the above ad-dress together with written notice that service was so made. I further make oath that the return receipt  for  the  registered or certified letter was received at my office in Nashville, Tennessee, on

**Monday, June 07, 2010**   , and returned to   SHELBY COUNTY-CHANCERY COURT

of   MEMPHIS   , Tennessee on  **Monday, June 07, 2010**

*Tre Hargett*

Tre Hargett
Secretary of State

by  *Darlene Lawrence*

Subscribed and sworn to before me,

this 7TH   day of   JUNE   , 2010

*Anne Hackney*

NOTARY PUBLIC

My commission expireS  9-8-2013

ANNE HACKNEY
STATE
OF
TENNESSEE
NOTARY
PUBLIC
DAVIDSON COUNTY, TN



SS-4201 (Rev. 2/90)

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

WORLD SAVINGS BANK, FSB
4101 WISEMAN BLVD.
SAN ANTONIO, TX 78251

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____ ☐ Agent
                     ☐ Addres

B. Received by (Printed Name)   C. Date of Deliv

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

JUN 0 1 2010

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchand
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7009 0960 0001 1474 1625

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1

5·26·10