IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

JOHN L. BULLOCK,

      Plaintiff,

vs.                                        No. 10-2482-SHM-cgc

WORLD SAVINGS BANK, FSB,
et al.,

      Defendants.

---

ORDER GRANTING THE MOTION TO DISMISS FILED BY
DEFENDANTS WSB, WACHOVIA, AND REEDER
ORDER DISMISSING THE COMPLAINT AGAINST
DEFENDANTS JOHNSON AND PALO
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

---

On May 19, 2010, Plaintiff John L. Bullock, a resident of Memphis, Tennessee, filed a pro se Petition for Action to Quiet Title in the Chancery Court for the Thirtieth Judicial District at Memphis against World Savings Bank, FSB ("WSB"); Wachovia Mortgage ("Wachovia"); Mary C. Reeder, a Senior Vice President at Wachovia Mortgage ("Reeder"); the City of Memphis; Pamela Pope Johnson; and Melissa Palo. (Docket Entry ("D.E.") 1-1.) On June 24, 2010, Defendants WSB, Wachovia, and Reeder removed the case to federal court pursuant to 28 U.S.C. § 1441. (D.E. 1.)[1]

---

[1]    Defendants Johnson and Palo have not been served. In an order entered on October 29, 2010, the Court dismissed the action against the City of Memphis. (continued...)

On July 12, 2010, Defendants WSB, Wachovia, and Reeder filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (D.E. 8.) On August 3, 2010, Plaintiff filed a document, titled "Motion To Strike Dismissal of World Savings Bank, FSB, Wachovia Mortgage, FSB, Sr. Vice President Mary C. Reeder" (D.E. 10), that appeared to be a response to the motion to dismiss. The certificate of service for this document stated as follows:

> I, the Plaintiff, John L. Bullock, do hereby certify that on this 3rd day of August, 2010, a copy of the foregoing Motion to Strike Dismissal of World Savings Bank, FSB, Wachovia Mortgage, FSB, Senior Vice President Mary C Reeder, was electronically filed using the CM/ECF system and served on the following via Registered U.S. Mail:
>
> World Savings Bank, FSB, 4101 Wiseman Boulevard, San Antonio, TX 78251, To Wachovia Mortgage, FSB located at 4101 Wiseman Boulevard, San Antonio, TX 78251 and THE CITY OF MEMPHIS and their Agents Linebarger Goggan Blair & Sampson, LLP, One Commerce Square, 40 South Main Street, Suite 2250, Memphis, Tennessee 38103, C/O Pamela Pope Johnson and Melissa Palo.

(Id. at 6.) The Court issued an order on December 10, 2010, that, inter alia, struck Plaintiff's Motion to Strike from the record because a copy had not been served on counsel for Defendants WSB, Wachovia, and Reeder and extended Plaintiff's time to respond to the motion to dismiss by fifteen (15) days. (D.E. 15.) Plaintiff has not filed a response to the motion to dismiss, and the time for a response has expired. The Court will, therefore, address the merits of the motion.[2]

---

[1]   (...continued)
(D.E. 14.)

[2]   The December 15, 2010, order did not tell Plaintiff that the action would be dismissed if he failed to respond to the motion to dismiss and, (continued...)

Plaintiff's complaint alleges that he owns real property in Memphis, Tennessee, that is encumbered by mortgages, having a term of thirty (30) years, in the amounts of $78,750 and $15,750. (D.E. 1-1 at 1.) Plaintiff allegedly obtained those mortgages from Defendant WSB. (Id. at 2.)[3] Plaintiff apparently purchased the property, by Warranty Deed, on or about July 24, 2001. (Compl., Ex. C (D.E. 1-1 at 40-41).) By letter dated October 5, 2009, Defendant Wachovia notified Plaintiff that it had "resumed ownership of your mortgage and is therefore considered a 'new owner.' Wachovia continues to be the servicer of the mortgage." (Compl., Ex. D (D.E. 1-1 at 42).) By letter dated October 14, 2009, Defendant Reeder notified Plaintiff that, subject to regulatory approval, Wachovia would merge with Wells Fargo Bank, N.A. effective November 1, 2009. (Compl., Ex. E (D.E. 1-1 at 43).) Defendants are apparently attempting to foreclose on Plaintiff's real property. (See id. at 6-7.)

The complaint does not assert any clearly identified claims. Instead, it poses the following question:

> Does the original negotiable instrument Exhibit A and B, a breached commercial mortgage contract, governed by the federal laws and the uniform laws of all the states including the District of Columbia, become voidable if such original negotiable instrument Exhibit A and B (30 year mortgage transaction), is in contravention to the

---

[2]  (...continued)
therefore, the Court declines to dismiss the complaint against the moving defendants pursuant to Fed. R. Civ. P. 41(b).

[3]  A copy of a Deed of Trust for the $78,750 mortgage, dated on or about Apr. 25, 2007, is found at Ex. A to the complaint. (D.E. 1-1 at 14-29.) A copy of portions of an Open End Deed of Trust for an Equity Line of Credit in the amount of $15,750 is found at Ex. B to the complaint. (Id. at 30-58.)

3

> rules of law under which it is governed? (The Statutes at
> Large, Treaties, and Proclamations of the United States
> of America (from December 1863-December 1865), Volume 13,
> 38th Congress, Session I, Chapters 104, 106, & 107, Pages
> 99-118.)

(D.E. 1-1 at 2.) The complaint also cites

> 15 United States Code (U.S.C. Chapter 41, Subchapter V §
> 1692(e), (f) & (g), 18 U.S.C. Part I, Chapter 63 § 1344,
> 18 U.S.C. Part I, Chapter 96 § 1961, 18 U.S.C. Part I,
> Chapter 96 § 1982(a) and (b), Article 3 U.C.C. § 3-
> 305(a)1; Tennessee Code Annotated (T.C.A.) Title 28
> Chapter 14 § 110; T.C.A. Title 29 Chapter 14 § 103;
> T.C.A. Title 47 Chapter 3 §306(a)1; T.C.A. Title 47
> Chapter 18 § 104(a)(b)12[.]

(<u>Id.</u> at 6.)

The complaint appears to argue that mortgages with terms
longer than five years are illegal. (<u>Id.</u> at 2-3, 5, 6-7, 8.) The
complaint alleges fraud and breach of contract because Plaintiff
allegedly did not receive "a proper copy of the security instrument
and notes" but, instead, received "a copy instead of a conformed
copy." (<u>Id.</u> at 4; <u>see also</u> <u>id.</u> at 5-6, 8.) Plaintiff seeks to
inspect the original conformed copies of the notes (<u>id.</u> at 8) and
an order removing any and all clouds on his title (<u>id.</u> at 9).

The standard for assessing a Rule 12(b)(6) motion is as
follows:

> Federal Rule of Civil Procedure 8(a)(2) requires
> only "a short and plain statement of the claim showing
> that the pleader is entitled to relief," in order to
> "give the defendant fair notice of what the . . . claim
> is and the grounds upon which it rests," <u>Conley v.
> Gibson</u>, 355 U.S. 41, 47 . . . (1957). While a complaint
> attacked by a Rule 12(b)(6) motion to dismiss does not
> need detailed factual allegations, <u>ibid.</u>; <u>Sanjuan v.
> American Bd. of Psychiatry and Neurology, Inc.</u>, 40 F.3d
> 247, 251 (C.A. 7 1994), a plaintiff's obligation to
> provide the "grounds" of his "entitle[ment] to relief"
> requires more than labels and conclusions, and a

4

formulaic recitation of the elements of a cause of action
will not do, see <u>Papasan v. Allain</u>, 478 U.S. 265, 286 .
. . (1986) (on a motion to dismiss, courts "are not bound
to accept as true a legal conclusion couched as a factual
allegation"). Factual allegations must be enough to raise
a right to relief above the speculative level, see 5 C.
Wright & A. Miller, <u>Federal Practice and Procedure</u> §
1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright &
Miller) ("[T]he pleading must contain something more . .
. than . . . a statement of facts that merely creates a
suspicion [of] a legally cognizable right of action"), on
the assumption that all the allegations in the complaint
are true (even if doubtful in fact), see, <u>e.g.</u>,
<u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 508, n. 1, .
. . (2002); <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 . . .
(1989) ("Rule 12(b)(6) does not countenance . . .
dismissals based on a judge's disbelief of a complaint's
factual allegations"); <u>Scheuer v. Rhodes</u>, 416 U.S. 232,
236 . . . (1974) (a well-pleaded complaint may proceed
even if it appears "that a recovery is very remote and
unlikely").

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 554, 555-56 (2007) (footnote

omitted). The Supreme Court explained that the notice pleading

rules do not eliminate a plaintiff's obligation to set forth some

factual basis for his claims:

While, for most types of cases, the Federal Rules [of
Civil Procedure] eliminated the cumbersome requirement
that a claimant "set out <u>in detail</u> the facts upon which
he bases his claim," <u>Conley v. Gibson</u>, 355 U.S. 41, 47 .
. . (1957) (emphasis added), Rule 8(a)(2) still requires
a "showing," rather than a blanket assertion, of
entitlement to relief. Without some factual allegation in
the complaint, it is hard to see how a claimant could
satisfy the requirement of providing not only the "fair
notice" of the nature of the claim, but also "grounds" on
which the claim rests. See 5 Wright & Miller § 1202, at
94, 95 (Rule 8(a) "contemplate[s] the statement of
circumstances, occurrences, and events in support of the
claim presented" and does not authorize a pleader's "bare
averment that he wants relief and is entitled to it").

<u>Id.</u> at 556 n.3.

<u>Twombly</u> was an antitrust case and, after that decision,

some courts assumed that the requirement that a litigant plead the

5

factual basis for his claims was applicable primarily to complex litigation.[4] However, the Supreme Court has extended the principles stated in <u>Twombly</u> to a civil rights claim under <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1974). In <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), the Court stated that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 1950. Applying those standards, the Supreme Court held that the plaintiffs had not adequately alleged that the moving defendants had purposely discriminated against them on the basis of their religion. <u>Id.</u> at 1950-52.

---

[4]    <u>See, e.g.</u>, <u>United States v. Ford Motor Co.</u>, 532 F.3d 496, 503 n.6 (6th Cir. 2008); <u>Sensations, Inc. v. City of Grand Rapids</u>, 526 F.3d 291, 295-96, 296 n.1 (6th Cir. 2008). In so holding, the Sixth Circuit was attempting to reconcile <u>Twombly</u> with <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007) (per curiam), which was decided two weeks after <u>Twombly</u>. In <u>Erickson</u>, the Supreme Court vacated the dismissal of a lawsuit brought by a prisoner suffering from hepatitis C who alleged that he had received inadequate medical treatment when he was terminated from a treatment program. The district court dismissed the complaint for failure to state a claim, and the Tenth Circuit Court of Appeals affirmed, holding that the prisoner's allegations of injury were conclusory. The Supreme Court observed that this "holding departs in so stark a manner from the pleading standard mandated by the Federal Rules of Civil Procedure that we grant review." 551 U.S. at 90. The prisoner had alleged that he had hepatitis C, that he met the prison's standards for treatment of the disease, and that the disease can cause irreversible damage to his liver and even death. <u>Id.</u> at 91-92; <u>see also</u> <u>id.</u> at 94. In holding that the prisoner's allegations of harm were sufficient to satisfy Rule 8(a)(2), the Supreme Court emphasized the liberal pleading standard of Fed. R. Civ. P. 8(a)(2) and the plaintiff's <u>pro se</u> status. <u>Id.</u> at 93-94. The Supreme Court also noted that it was not deciding that the prisoner's case was sufficient in all respects to survive a motion to dismiss but, rather, only that the allegations of injury were sufficient to satisfy Rule 8(a)(2). <u>Id.</u> at 93, 94.

Pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. As the Sixth Circuit has explained:

> Before the recent onslaught of pro se prisoner suits, the Supreme Court suggested that pro se complaints are to be held to a less stringent standard than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519 . . . (1972) (per curiam). Neither that Court nor other courts, however, have been willing to abrogate basic pleading essentials in pro se suits. See, e.g., id. at 521 . . . (holding petitioner to standards of Conley v. Gibson); Merritt v. Faulkner, 697 F.2d 761 (7th Cir.) (duty to be less stringent with pro se complaint does not require court to conjure up unplead allegations), cert. denied, 464 U.S. 986 . . . (1983); McDonald v. Hall, 610 F.2d 16 (1st Cir.1979) (same); Jarrell v. Tisch, 656 F. Supp. 237 (D.D.C. 1987) (pro se plaintiffs should plead with requisite specificity so as to give defendants notice); Holsey v. Collins, 90 F.R.D. 122 (D. Md. 1981) (even pro se litigants must meet some minimum standards).

Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Lindsay v. Owens Loan, No. 08-CV-12526, 2008 WL 2795944, at *1 (E.D. Mich. July 18, 2008) ("While pro se litigants should not be held to the same stringent standard as licensed attorneys who draft pleadings . . . , it is also not the role of the court to speculate about the nature of the claims asserted."); Reeves v. Ratliff, No. Civ.A.05CV112-HRW, 2005 WL 1719970, at *2 (E.D. Ky. July 21, 2005) ("Judges are not required to construct a [pro se] party's legal arguments for him."); United States v. Kraljevich, No. 02-40316, 2004 WL 1192442, at *3 (E.D. Mich. Apr. 15, 2004); Payne v. Secretary of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2); "Neither this court nor the district court is required to create Payne's claim for her."); cf. Pliler v. Ford,

7

542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants.").

Defendants first argue that the complaint does not assert a viable claim under the National Bank Act, 12 U.S.C. § 29. (D.E. 8-1 at 4-5.) Other courts in this district have dismissed claims sua sponte that purported to seek relief under the original version of the National Bank Act. In Sherman v. Saxon Mortgage Servs., Inc., No. 10-2282-STA-tmp, 2010 WL 2465459 (W.D. Tenn. June 14, 2010), the Court stated as follows:

> Much of the complaint consists of a list of cases . . . , and what purports to be a lengthy summary of the provisions of the "National Bank/Currency Act," as enacted by the Thirty-eighth Congress . . . . The 38th Congress sat from March 4, 1863, to March 4, 1865. Plaintiffs are presumably referring to the National Bank Act of 1864, 13 Stat. 99, which provided, inter alia, for the federal chartering of national banks. Plaintiffs may also be referring to the National Currency Act of 1863, 12 Stat. 665.

> The complaint cites provisions from the National Bank Act of 1964, taken from Statutes at Large, that prohibit national banking associations from holding real estate, either directly or under mortgage . . . ; and that limit the total amount of bank notes in circulation to $300 million . . . ; and they argue that "FEDERAL RESERVE NOTES ARE NOT MONEY BY LAW" . . . . Plaintiffs also contend that "Banks and Financial Institutions cannot enter into mortgage agreements beyond a 5 year period" . . . and that their 30-year mortgage "by operation of law is fraud in the factum" . . . . Plaintiffs also assert that the Statutes at Large "hold[s] lawful and legal precedence over [the] United States Code." . . . . This statement, which implicitly relies on 1 U.S.C. § 204(a), means only that the Statutes at Large controls when there is an issue whether the U.S. Code accurately sets forth the law as passed by Congress. Nothing in that provision, or in the decisions cited in the complaint, authorizes a federal court to ignore the numerous amendments to the federal banking laws in the past one hundred forty-five (145) years. Thus, Plaintiffs' vague references to the National Bank Act of

> 1864, which is currently codified, as amended, in Title
> 12 of the United States Code, are insufficient to give
> fair notice of their claims under that statute.  See
> Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed.
> 2d 80 (1955).

Id. at *3 (record citations omitted); see also Applewhite v. Sun

Trust Bank Inc., No. 10-2240-JPM-dkv, slip op. at 5-7 (W.D. Tenn.

May 26, 2010); McCarley v. Nation Star Mortgage, No. 10-2182-JPM-

cgc, slip op. at 7-8 (W.D. Tenn. Apr. 15, 2010); Jones v. Midland

Mortgage Co., No. 09-2732-JDT-dkv, slip op. at 2-3, 4, 6-7 (W.D.

Tenn. Feb. 3, 2010); Williams v. Stumpf, No. 09-2814-JDT-dkv, slip

op. at 2, 5-6 (W.D. Tenn. Jan 22, 2010).

     The current version of the statute on which Plaintiff

relies is found at 12 U.S.C. § 29, which provides as follows:

> A national banking association may purchase, hold,
> and convey real estate for the following purposes, and
> for no others:
>
>     **First.**  Such  as  shall  be  necessary  for  its
> accommodation in the transaction of its business.
>
>     **Second.** Such as shall be mortgaged to it in good
> faith  by  way  of  security  for  debts  previously
> contracted.
>
>     **Third.**  Such  as  shall  be  conveyed  to  it  in
> satisfaction of debts previously contracted in the
> course of its dealings.
>
>     **Fourth.** Such as it shall purchase at sales under
> judgments,  decrees,  or  mortgages  held  by  the
> association, or shall purchase to secure debts due
> to it.
>
> But no such association shall hold the possession of
> any  real  estate  under  mortgage,  or  the  title  and
> possession of any real estate purchased to secure any
> debts due to it, for a longer period than five years
> except as otherwise provided in this section.

> For real estate in the possession of a national banking association upon application by the association, the Comptroller of the Currency may approve the possession of any such real estate by such association for a period longer than five years, but not to exceed an additional five years, if (1) the association has made a good faith attempt to dispose of the real estate within the five-year period, or (2) disposal within the five-year period would be detrimental to the association. Upon notification by the association to the Comptroller of the Currency that such conditions exist that require the expenditure of funds for the development and improvement of such real estate, and subject to such conditions and limitations as the Comptroller of the Currency shall prescribe, the association may expend such funds as are needed to enable such association to recover its total investment.

> Notwithstanding the five-year holding limitation of this section or any other provision of title 62 of the Revised Statutes, any national banking association which on October 15, 1982, held, directly or indirectly, real estate, including any subsurface rights or interests therein, that since December 31, 1979, had not been valued on the books of such association for more than a nominal amount, may continue to hold such real estate, rights, or interests for such longer period of time as would be permitted a State chartered bank by the law of the State in which the association is located if the aggregate amount of earnings from such real estate, rights, or interests is separately disclosed in the annual financial statements of the association.

The complaint does not allege that any defendant is a national banking association subject to this provision.

There is no private right of action under 12 U.S.C. § 29, and Plaintiff cannot avoid foreclosure on his property by alleging a violation of the National Bank Act. As another district court has explained:

> None of these statutes provide borrowers with a private right of action against banks for violations of the statute nor should one be implied. Provisions of the National Bank Act, such as Sections 29 and 83, which do not prescribe a penalty for noncompliance may be enforced only by the government. <u>Thompson v. St. Nicholas Nat'l</u>

10

>
> Bank, 146 U.S. 240, 251, 13 S. Ct. 66, 36 L. Ed. 956
> (1892) ("it has been held repeatedly by this court that
> where the provisions of the national banking act prohibit
> certain acts by banks or their officers, without imposing
> any penalty or forfeiture applicable to particular
> transactions which have been executed, their validity can
> be questioned only by the United States, and not by
> private parties"); see Kerfoot v. Farmers' & Merchants'
> Bank, 218 U.S. 281, 287, 31 S. Ct. 14, 54 L. Ed. 1042
> (1910) (only the government can object to a violation of
> a prior version of Section 29); First Nat'l Bank v.
> Stewart, 107 U.S. 676, 678, 2 S. Ct. 778, 27 L. Ed. 592
> (1883) (only the government can object to a violation of
> prior version of Section 83); see also Federal Deposit
> Ins. Corp. v. Meo, 505 F.2d 790, 793 n.2 (9th Cir. 1974);
> Noel Estate, Inc. v. Commercial Nat'l Bank in Shreveport,
> 232 F.2d 483, 485 (5th Cir. 1956); Barron v. McKinnon,
> 196 F. 933, 939 (1st Cir. 1912). Indeed, the Supreme
> Court has specifically held that borrowers cannot avoid
> foreclosure based upon an allegation that the loan for
> which their property was pledged as security violated the
> National Bank Act. Union Nat'l Bank v. Matthews, 98 U.S.
> 621, 627-29, 25 L. Ed. 188 (1878).

Davis v. Countywide Home Loans, No. 09 Civ. 8606(RJS)(HBP), 2010 WL
3219306, at *8 (S.D.N.Y. July 23, 2010) (report and recommendation)
(footnote omitted), adopted, 2010 WL 3219304 (S.D.N.Y. Aug. 13,
2010).

Plaintiff's argument that mortgages having a term longer
than five years are illegal is without merit as a matter of law:

> 12 U.S.C. § 371 expressly authorizes national banks to
> engage in real estate lending, and provides, in relevant
> part: "Any national banking association may make,
> arrange, purchase or sell loans or extensions of credit
> secured by liens on interests in real estate, subject to
> section 1828o of the title and such restrictions and
> requirements as the Comptroller of the Currency may
> prescribe by regulation or order." 12 U.S.C. § 371(a).
> Section 1828o does not contain a time limitation. While
> 12 U.S.C. § 29 does prohibit a national banking
> association from holding "the possession of any real
> estate under mortgage, or the title and possession of any
> real estate purchased to secure any debts due to it, for
> a period longer than five years," this provision is
> inapplicable to plaintiff's Complaint because plaintiff

> does not allege, nor does it appear from the record, that any defendant ever possessed the property that is referenced in the note and in plaintiff's complaint.

Barnes v. Wells Fargo & Co., No. 4:10CV619 FRB, 2010 WL 3911405, at *4 (E.D. Mo. Sept. 30, 2008); see also Barnes v. Citigroup, Inc., No. 4:10CV620 JCH, 2010 WL 2557508, at *3 (E.D. Mo. June 15, 2010) (12 U.S.C. § 29 "inapplicable, as Defendants do not possess Plaintiff's home"). "[T]hirty-year mortgages are common in the lending industry." Wilson v. Bank of Am. Corp., No. 4:10-CV-512 CAS, 2010 WL 3843781, at *4 (E.D. Mo. Sept. 27, 2010); see also Barnes, 2010 WL 2557508, at *3 ("[N]ational banks are permitted to 'make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate,' and thirty-year mortgages are common in the lending industry.").

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss the claim for violation of the National Bank Act.

Defendants have also moved to dismiss any claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq. (D.E. 8-1 at 5-6.) Congress enacted the FDCPA to eliminate "abusive, deceptive, and unfair debt collection practices" by "debt collectors." 15 U.S.C. § 1692(a); see also Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 591 (6th Cir. 2009) (citing 15 U.S.C. § 1692(e)). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another." 15 U.S.C. § 1692a(6). "Creditors who use names other than their own—such as a third-party name—to collect on their own debts also qualify as debt collectors under the Act." <u>Montgomery v. Huntington Bank</u>, 346 F.3d 693 (6th Cir. 2003) (citing 15 U.S.C. § 1692a(6)). The Act defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

The complaint does not allege that any of the named defendants are "debt collectors." Instead, it alleges that Plaintiff obtained a loan from Defendant WSB, and the loan was subsequently transferred to Defendant Wachovia. Thus, WSB is a "creditor" within the meaning of the Act.[5] "A bank that is 'a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts.'" <u>Montgomery</u>, 346 F.3d at 699 (quoting <u>Stafford v. Cross Country Bank</u>, 262 F. Supp. 2d 776, 794 (W.D. Ky. 2003)) (additional citations omitted); <u>see also</u> <u>Perry v. Stewart Title Co.</u>, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors."). Because the complaint does not allege that the loans were in default when they were transferred to

---

[5]    Defendant Reeder is not alleged to be a "debt collector" or a "creditor" and, therefore, the basis for any claim against her under the FDCPA is unclear.

Wachovia or that the transfer was made "solely for the purpose of facilitating collection of such debt for another," Wachovia is also a "creditor." Even if one or more defendants were "debt collectors" subject to the FDCPA, the complaint does not allege a violation of that statute.

The Court GRANTS Defendants' motion to dismiss any FDCPA claim by Plaintiff claim pursuant to Fed. R. Civ. P. 12(b)(6).

Next, Defendants argue that Plaintiff has no private right of action under 18 U.S.C. § 1344, a federal criminal statute that prohibits bank fraud. (D.E. 8-1 at 6-7.) The statute provides as follows:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

The statute is, on its face, inapplicable because the complaint does not allege that any defendant executed a scheme or artifice to defraud a financial institution or to obtain property owned by, or under the custody or control of, a financial institution. Instead, the complaint asserts that the defendant financial institutions attempted to defraud Plaintiff. Any such conduct would not violate 18 U.S.C. § 1344. Thornton v. Rozen Constr., No. 1:10-CV-73, 2010 WL 882824, at *2 n.1 (W.D. Mich. Mar. 8, 2010) ("[S]ection 1344

14

criminalizes fraud committed <u>against</u> a bank. Plaintiff's complaint, to the extent that it is intelligible, appears to allege that the bank committed a fraud against her. Under no stretch of the imagination can the bank fraud statute be construed as applying to the facts set forth in plaintiff's complaint.") (emphasis in original) (report and recommendation adopted by district court).

In general, a criminal statute does not give rise to a private cause of action and cannot be a basis for a private civil action. <u>Walker v. Hastings</u>, Civil No. 09-CV-074-ART, 2009 WL 2914402, at *4 (E.D. Ky. Sept. 4, 2009). There is no private right of action under 18 U.S.C. § 1344. <u>Id.</u> at *2; <u>Milgrom v. Burstein</u>, 374 F. Supp. 2d 523, 528-29 (E.D. Ky. 2005).

The Court GRANTS Defendants' motion to dismiss any claim under 18 U.S.C. § 1344.

Defendants next argue that Plaintiff's fraud claims do not comply with Fed. R. Civ. P. 9(b), which requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." (D.E. 8-1 at 7-9.) It is unclear whether Plaintiff's fraud claims arise under Tennessee law or a federal statute. The complaint refers to "contractual mortgage fraud" (D.E. 1-1 at 3) and asserts a "defense" for "fraud in the factum that breaches the commercial mortgage contract and the debt obligation of the obligor" (<u>id.</u> at 4).

Under Tennessee law, the elements of common-law fraud are

"(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation involve a past or existing fact."

Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC, 491 F.3d 522, 526 (6th Cir. 2007) (quoting Kincaid v. SouthTrust Bank, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006)).

As a general rule, a party may be found to be liable for damages caused by his failure to disclose material facts to the same extent that a party may be liable for damages caused by fraudulent or negligent misrepresentation. . . . A person who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose. However to find such liability, there must also be a showing that the person accused of the concealment had a duty to the other to disclose the matter in question.

Homestead Group, LLC v. Bank of Tenn., 307 S.W.3d 746, 751 (Tenn. Ct. App. 2009), perm. app. denied (Tenn. 2009); accord Saltire Indus., Inc., 491 F.3d at 526 (elements of a fraud claim based on the intentional failure to disclose a material fact).

Generally, to find fraud by concealment or suppression of the truth there must be something more than mere silence, or a mere failure to disclose known facts. This Court has described the nature of fraudulent concealment as [sic] "[c]oncealment in this sense may consist in withholding information asked for, or in making use of some device to mislead, thus involving act and intention. The term generally infers that the person is in some way called upon to make a disclosure. It may be said, therefore, that, in addition to a failure to disclose known facts, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry, or else that there must be a legal or equitable duty resting on the party knowing such facts to disclose

16

them." <u>Anderson v. Warren</u>, W2000-02649-COA-R3-CV, 2001 WL 1683810 at *3 (Tenn. Ct. App. Dec. 12, 2001).

<u>Homestead Group, LLC</u>, 307 S.W.3d at 752.

The complaint also refers to fraud in the factum, which is a defense to enforcement of a contract by a holder in due course.

> The common illustration is that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document. The theory of the defense is that his signature on the instrument is ineffective because he did not intend to sign such an instrument at all. Under this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms.
>
> The test of the defense here stated is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable oportunity [sic] to obtain knowledge. In determining what is a reasonable opportunity all relevant factors are to be taken into account, including the age and sex of the party, his intelligence, education and business experience; his ability to read or to understand English, the representations made to him and his reason to rely on them or to have confidence in the person making them; the presence or absence of any third person who might read or explain the instrument to him, or any other possibility of obtaining independent information; and the apparent necessity, or lack of it, for acting without delay.
>
> Unless the misrepresentation meets this test, the defense is cut off by a holder in due course.

<u>First State Bank v. Tate</u>, 1988 WL 77625, at *5 (Tenn. Ct. App. July 28, 1988).

To comply with Rule 9(b), a complaint alleging a fraudulent representation "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain

17

why the statements were fraudulent.'" <u>Frank v. Dana Corp.</u>, 547 F.3d 564, 570 (6th Cir. 2008) (quoting <u>Gupta v. Terra Nitrogen Corp.</u>, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). A plaintiff must, "[a]t a minimum," "allege the time, place and contents of the misrepresentations upon which [he] relied." <u>Id.</u> (citing <u>Bender v. Southland Corp.</u>, 749 F.2d 1205, 1216 (6th Cir. 1984)). "Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)." <u>Bovee v. Coopers & Lybrand C.P.A.</u>, 272 F.3d 356, 361 (6th Cir. 2001). A plaintiff who asserts a claim based on a failure to disclose must plead all the elements with particularity. 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1297, at 72-73, 101 (3d ed. 2004).

Plaintiff's complaint does not satisfy these standards. The basis for Plaintiff's fraud claim is difficult to discern. The complaint does not identify any false statement made by any Defendant, nor does it allege the other elements of a fraud claim. Plaintiff may be contending that Defendant WSB committed fraud by failing to disclose that a thirty-year mortgage was illegal.[6] Any representation, explicit or implicit, about the legal validity of thirty-year mortgages would be a legal opinion that cannot form the basis for a fraud claim. <u>See</u> <u>Helton v. Viers</u>, No. E2003, 00132-COA-R3-CV, 2003 WL 22462537, at *4 (Tenn. Ct. App. Oct. 20, 2003).

The complaint does not allege that WSB owed Plaintiff a duty to disclose and does not allege that WSB knew that the

---

[6]     Any such claim could not be asserted against Defendants Wachovia and Reeder. The complaint makes clear that they were not parties to the original mortgage.

mortgage it offered Plaintiff was unlawful. That thirty-year

mortgage loans are common, <u>see</u> <u>supra</u> p. 12, tends to suggest that

WSB would not have known or believed they were unlawful. Moreover,

> [o]ne party to a transaction usually has no duty to
> disclose material facts to the other. <u>Wright v. C & S</u>
> <u>Family Credit, Inc.</u>, No. 01A01-9709-CH-00470, 1998 WL
> 195954 at *2 (Tenn. Ct. App. Apr. 24, 1998). However,
> Tennessee courts have identified three exceptions to this
> general rule and have held that a duty to disclose
> exists: where there is a previous definite fiduciary
> relationship between the parties; where it appears one or
> each of the parties to the contract expressly reposes a
> trust and confidence in the other; or where the contract
> or transaction is intrinsically fiduciary and calls for
> perfect good faith such as a contract of insurance which
> is an example of this last class. . . . Moreover, the
> courts have extended the duty of disclosure of material
> facts to real estate transactions under certain
> circumstances.

<u>Homestead Group, LLC</u>, 307 S.W.3d at 751-52 (additional citation

omitted); <u>see also</u> <u>Burkhart v. Wells Fargo Bank West, N.A.</u>, No.

E2006-01402-COA-R3-CV, 2007 WL 1836850, at *4 (Tenn. Ct. App. June

27, 2007) (same); <u>Wright v. C&C Family Credit</u>, No. 01A01-9709-CH-

00470, 1998 WL 195954, at *2 (Tenn. Ct. App. Apr. 24, 1998)

(same).[7] "Under Tennessee law, the debtor/creditor relationship

does not constitute a fiduciary relationship." <u>Wright</u>, 1998 WL

195954, at *3; <u>see also</u> <u>Rogers v. First Nat'l Bank</u>, No. M2004-

02414-COA-R3-CV, 2006 WL 344759, at *9-*10 (Tenn. Ct. App. Feb. 14,

2006) (discussing the circumstances under which a bank might be a

fiduciary). "In order for a duty of disclosure to arise under this

---

[7]     A duty to disclose in a real estate transaction arises where the
seller is aware of material facts affecting the value of the property that are
not reasonably known by, or discoverable by, the buyer. <u>Burkhart</u>, 2007 WL
1836850, at *4. This case does not arise from a sale of real property. Plaintiff
was refinancing real property he already owned.

exception [in which one party reposes trust and confidence in the other], the evidence must show that the lending institution either knew or had reason to know that the customer was placing his trust and confidence in the lender and was relying upon the lender to counsel and inform him." <u>Wright</u>, 1998 WL 195954, at *3.

The complaint also does not allege fraud in the factum adequately. There is no allegation that Plaintiff was not given the opportunity to read the mortgage documents before he signed them or that the mortgage documents contained any terms that are not common in transactions of this nature. The documents submitted by Plaintiff contain his initials at the bottom of each page. (<u>See</u> D.E. 1-1 at 15-39.) "A party is presumed to know the contents of a contract he has signed. . . . The law imparts a duty on parties to a contract to learn the contents and stipulations of a contract before signing it, and signing it without learning such information is at the party's own peril." <u>Philpot v. Tennessee Health Mgmt., Inc.</u>, 279 S.W.3d 573, 581 (Tenn. Ct. App. 2007), <u>perm. app. denied</u> (Tenn. 2009) (citations omitted).

For all of the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's fraud claims.

The complaint also relies on the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S. C. §§ 1961 <u>et seq.</u> (D.E. 1-1 at 6.) The complaint cites 18 U.S.C. § 1961, a definitional provision, and 18 U.S.C. § 1962(a) & (b), which provide in pertinent part as follows:

20

> (a)   It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .
>
> (b)   It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Rule 9(b) applies to RICO claims. Brown v. Cassens Transp. Co., 546 F.3d 347, 356 n.4 (6th Cir. 2008); Blount Fin. Servs., Inc. v. Walter E. Heller & Co., 819 F.2d 151, 152-53 (6th Cir. 1987). "The Plaintiff[] must plead more than a generalized grievance against a collective group of Defendants in order to meet the requirements of FRCP 9(b)." Masterson v. Meade Cnty. Fiscal Court, 489 F. Supp. 2d 740, 749 (W.D. Ky. 2007) (citing United States ex rel. Bledsoe v. Community Health Sys., Inc., 342 F.3d 634, 643 (6th Cir. 2003)).

The complaint does not contain even conclusory allegations of a RICO violation. An "unlawful debt" is defined as

> a debt (A) incurred or contracted in a gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6). The complaint does not even allege that Plaintiff made payments on his mortgages to Defendants WSB or Wachovia. Even assuming that the thirty-year mortgages were unlawful and that the receipt by Defendants WSB and Wachovia of mortgage payments, or the foreclosure action, qualified as collection of an unlawful debt, the complaint does not allege that Defendants used the moneys received "in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," as required for liability under § 1961(a) and (b).

The plaintiff must "allege[] . . . a criminal enterprise separate and distinct from the alleged pattern of racketeering activity. This is a distinct and necessary element of a RICO claim." American Nursing Care, Inc. v. Leisure, 609 F. Supp. 419, 430 (N.D. Ohio 1984). The RICO "person" must be distinct from the "enterprise." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001) (interpreting § 1962(c)); see also Begala v. PNC Bank, 214 F.3d 776, 781 (6th Cir. 2000) ("Under RICO, a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise."). "The 'enterprise' referred to in subsections (a) and (b) is thus something acquired through the use of illegal activities or by money obtained through illegal activities. The enterprise in these subsections is the victim of unlawful activity." National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 259 (1994). Plaintiff's

22

complaint does not allege the existence of a RICO enterprise. At most, it alleges that Defendants engaged in the collection of an illegal debt.

The complaint also does not allege that Plaintiff suffered any injury. Under 18 U.S.C. § 1964(c), "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor." "[T]o state a claim under § 1962(a), a plaintiff must plead a specific injury to the plaintiff caused by the investment of income into the racketeering enterprise, <u>distinct from</u> any injuries caused by the predicate acts of racketeering." <u>Vemco, Inc. v. Camardella</u>, 23 F.3d 129, 132 (6th Cir. 1994) (emphasis in original). The injury must stem from the investment, rather than from the predicate acts. <u>Id.</u> at 132-33; <u>see also</u> <u>Masterson</u>, 489 F. Supp. 2d at 750 (same); <u>Lucas-Cooper v. Palmetto GBA</u>, No. 1:05-cv-00959, 2006 WL 2583407, at *8 (N.D. Ohio Sept. 7, 2006) (same); <u>James v. McCoy</u>, 56 F. Supp. 2d 919, 938 (S.D. Ohio 1998) (same). In this case, Plaintiff's alleged injury stems from the predicate acts, rather than the investment. Therefore, the complaint fails to state a claim under § 1962(a).

The complaint also does not state a claim under § 1962(b).

> "A violation of § 1962(b) requires that the RICO defendant acquire or maintain an interest in, or control of, an enterprise through (or by way of) the pattern of racketeering activity." <u>Advocacy Organization for Patients and Providers v. Auto Club Ins. Ass'n</u>, 176 F.3d 315, 328 (6th Cir. 1999). "[A] complaint for violation of § 1962(b) must allege an 'acquisition or maintenance' injury separate and apart from the injury suffered as a result of the predicate acts of racketeering activity."

Id. at 329. For a plaintiff to state a claim under
Section 1962(b), a plaintiff must plead facts that
establish that the Defendants: (1) acquired or maintained
(2) through a pattern of racketeering activity or the
collection of an unlawful debt; (3) an interest in or
control of an enterprise; and (4) engaged in, or the
activities of which affect, interstate or foreign
commerce. Id. at 321.

To successfully allege a claim under Section
1962(b), "'a RICO plaintiff must demonstrate that the
defendant's acquisition or control of an interstate
enterprise injured [the] plaintiff. In other words,
injury from the racketeering acts themselves is not
sufficient; rather, a plaintiff must plead facts tending
to show that the acquisition or control of an interest
injured [the] plaintiff.'" Id. at 330.

Masterson, 489 F. Supp. 2d at 750. As previously stated, any injury

suffered by Plaintiff was the result of the predicate acts, not

from Defendants' acquisition or maintenance of control of the

enterprise.

For all of the foregoing reasons, the Court GRANTS

Defendants' motion to dismiss the RICO claims.

Next, Defendants argue that the complaint does not state

a claim under Tenn. Code Ann. § 47-3-305, which is Tennessee's

version of § 3-305 of the Uniform Commercial Code ("UCC"). (D.E. 8-

1 at 10-11.) Section 47-3-305 provides as follows:

(a) Except as stated in subsection (b), the right to
enforce the obligation of a party to pay an instrument is
subject to the following:

(1) a defense of the obligor based on (i)
infancy of the obligor to the extent it is a
defense to a simple contract, (ii) duress, lack of
legal capacity, or illegality of the transaction
which, under other law, nullifies the obligation of
the obligor, (iii) fraud that induced the obligor
to sign the instrument with neither knowledge nor
reasonable opportunity to learn of its character or

24

its essential terms, or (iv) discharge of the obligor in insolvency proceedings;

(2) a defense of the obligor stated in another section of this chapter or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract; and

(3) a claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.

(b) The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in subsection (a)(1), but is not subject to defenses of the obligor stated in subsection (a)(2) or claims in recoupment stated in subsection (a)(3) against a person other than the holder.

(c) Except as stated in subsection (d), in an action to enforce the obligation of a party to pay the instrument, the obligor may not assert against the person entitled to enforce the instrument a defense, claim in recoupment, or claim to the instrument (§ 47-3-306) of another person, but the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the claim against the person entitled to enforce the instrument. An obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument.

(d) In an action to enforce the obligation of an accommodation party to pay an instrument, the accommodation party may assert against the person entitled to enforce the instrument any defense or claim in recoupment under subsection (a) that the accommodated party could assert against the person entitled to enforce the instrument, except the defenses of discharge in insolvency proceedings, infancy, and lack of legal capacity.

25

Even assuming there were an independent right of action under § 47-4-305, the complaint does not identify the provision that was allegedly violated and contains no factual allegations to support the claim. The Court has held that the complaint does not adequately allege illegality or fraud in the inducement.

The Court GRANTS Defendants' motion to dismiss the claim under UCC § 3-305 and Tenn. Code Ann. § 47-3-305.

Defendants next argue that the complaint does not state a valid claim under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-104(b)(12), which prohibits persons from "[r]epresenting that a consumer transaction involves or confers rights, remedies or obligations that it does not have or involve or which are prohibited by law."

Under the TCPA, "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages." Tenn. Code Ann. § 47-18-109(a)(1).

> To establish a prima facie case of violation of the TCPA, plaintiffs must prove: (1) defendant engaged in an act or practice that is unfair or deceptive as defined under the TCPA; and (2) plaintiffs suffered a loss of money, property, or a thing of value as a result of the unfair or deceptive act of defendant. Tenn. Code Ann. § 47-18-109 (2006). Defendant correctly notes that Tennessee courts apply the particularity requirement of Rule 9.02 [of the Tennessee Rules of Civil Procedure] to claims brought under the TCPA. Harvey v. Ford Motor Co., 8 S.W.3d 373, 375 (Tenn. Ct. App. 1999). To satisfy that

> requirement, a complaint challenging violation of the TCPA must charge "misrepresentation, deceit, and concealment, and minimally [set] forth the facts." <u>Sullivant v. Americana Homes, Inc.</u>

<u>Scraggs v. La Petite Academy, Inc.</u>, No. 3:05-CV-539, 2006 WL 2711689, at *4 (E.D. Tenn. Sept. 21, 2006); <u>see also</u> <u>McLean v. Bourget's Bike Works, Inc.</u>, No. M2003-01944-COA-R3-CV, 2005 WL 2493479, at *7 (Tenn. Ct. App. Oct. 7, 2005) ("Claims under the Tennessee Consumer Protection must be pleaded with the same particularity that Tenn. R. Civ. P. 9.02 requires of common-law fraud claims."); <u>Harvey v. Ford Motor Credit Co.</u>, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999). Just as the complaint does not adequately plead a common-law fraud claim, <u>see</u> <u>supra</u> pp. 15-20, it does not allege a violation of the TCPA.

Defendants also argue that the TCPA does not encompass Plaintiff's contention that thirty-year mortgages are unlawful. (D.E. 8 at 12.) The TCPA is inapplicable to "[a]cts or transactions required or specifically authorized under the laws administered by, or rules and regulations promulgated by, any regulatory bodies or officers acting under the authority of this state or of the United States." Tenn. Code Ann. § 47-18-111(a). Defendants reason that, because national banks are permitted to "make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate," and because thirty-year mortgage loans are common, <u>see</u> <u>supra</u> pp. 11-12, such loans must fall within the exemption set forth in § 47-18-111(a). This argument is not persuasive.

Under Tenn. Code Ann. § 47-18-111(b), "[t]he burden of proving an exemption from the provisions of this part, as provided in this section, shall be upon the person claiming the exemption. Twelve U.S.C. § 371, the provision on which Defendants rely, applies to national banking associations, and no proof has been offered that any defendant is a national banking association. Moreover, the fact that thirty-year mortgage loans are not prohibited by the National Bank Act does not mean that any particular mortgage terms are "required or specifically authorized" by it.

Because the complaint does not adequately allege a violation of the TCPA, the Court GRANTS Defendants' motion to dismiss that claim.

Defendants also argue that Plaintiff's breach of contract allegations based on the deeds of trust fail to state a claim. (D.E. 8 at 12-14.) As previously noted, see supra p. 4, the complaint alleges that Defendants breached the deeds of trust by giving Plaintiff non-conformed copies of them. In reviewing a motion pursuant to Fed. R. Civ. P. 12(b)(6), a district court may consider the exhibits to the complaint if they are referred to in the complaint and are central to the claims contained in it. See, e.g., Scott v. Ambani, 577 F.3d 642 , 650 (6th Cir. 2009); Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). If an averment of the complaint is contradicted by an

28

exhibit that is central to the plaintiff's claim, the exhibit will be controlling. <u>Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union</u>, 221 F.2d 644, 647 (6th Cir. 1955) ("The collective bargaining contract was filed as an exhibit with the complaint, became a part of the complaint, and will be considered on the motion to dismiss. . . . If inconsistent with the allegations of the complaint, the exhibit controls.").

Under the terms of the Deed of Trust attached as Exhibit A to the Complaint, Plaintiff "acknowledge[d] the receipt of one conformed copy of the Secured Notes and this Security Instrument." (Compl., Ex. 1, ¶ 16 (D.E. 1-1 at 22).)[8] Plaintiff's specific acknowledgment that he received those documents defeats the vague and conclusory assertions of the form complaint that he did not.

As for the Open End Deed of Trust, which is attached as Exhibit B to the Complaint, the complaint does not allege that Plaintiff complied with all conditions precedent to suit. Pursuant to Fed. R. Civ. P. 9(c), "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."

Paragraph 12 of the Open End Deed of Trust provides, in pertinent part, as follows:

> <u>Neither Borrower nor Lender may commence, join, or be joined in any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of,</u>

---

[8]     This Deed of Trust evidences the first mortgage on Plaintiff's real property.

> this Security Instrument, until such Borrower or Lender
> has notified the other party (with such notice given in
> compliance with this Section 12) of such alleged breach
> and afforded the other party hereto a reasonable period
> after the giving of such notice to take corrective
> action. If applicable law provides a time period which
> must elapse before certain action can be taken, that time
> period will be deemed to be reasonable.

(D.E. 1-1 at 37 (emphasis added).) In this case, the Complaint does not allege that all conditions precedent to suit have been satisfied.

Therefore, the Court GRANTS Defendants' motion to dismiss Plaintiff's breach of contract claims.

Ordinarily, a first dismissal under Rule 12(b)(6) is without prejudice to a plaintiff's right to file an amended complaint that cures the identified deficiencies. In this case, however, Plaintiff has not responded to the motion to dismiss and, therefore, he appears to have abandoned this action. Therefore, the complaint against Defendants WSB, Wachovia, and Reeder is DISMISSED WITH PREJUDICE.

As previously noted, see supra p. 1 n.1, Defendants Johnson and Palo have not been served. In its December 10, 2010 order, the Court directed Plaintiff to show cause why the complaint against them should not be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m) and 41(b). Plaintiff has not responded to the show cause order, and the time for a response has expired. Therefore, the Court DISMISSES the complaint against Defendants Johnson and Palo without prejudice pursuant to Fed. R. Civ. P. 4(m) and 41(b).

Because all claims against all parties have been dismissed, judgment shall be entered for Defendants.

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. The United States Court of Appeals for the Sixth Circuit requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal would be frivolous. Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997). Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a). See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a) provides that if a party seeks pauper status on appeal, he must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the litigant must file his motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test under 28 U.S.C.

31

§ 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. Id. at 445-46. The same considerations that lead the Court to grant Defendants' motion for summary judgment also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal in forma pauperis. Leave to proceed on appeal in forma pauperis is, therefore, DENIED. If Plaintiff files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

IT IS SO ORDERED this 21st day of March, 2011.


s/Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE